CHICAGO G. W. RY. CO. v. FIRST METHODIST EPISCOPAL CHURCH OF LEAVENWORTH CITY, KAN.

(Circuit Court of Appeals, Eighth Circuit. May 2, 1900.)

No. 1,258.

1. APPEAL—FORMAL ERROR AS TO PARTIES—AMENDMENT.

The fact alone that an action was brought in the name of the wrong party as plaintiff is not ground for reversal, but the appellate court will direct the substitution of the proper party.

2. PRIVATE NUISANCE—USE OF STREET BY RAILROADS—LEGISLATIVE AUTHORITY.

Neither by legislative enactment nor by ordinance of a city can the use of a public street be granted to a private corporation for uses which constitute a private nuisance, and result in special injury to the owners of property abutting on the street, except upon making compensation for such injury.

3. RAILROADS—GRANT OF RIGHT TO USE STREET—CONSTRUCTION.

A grant to a railroad company of the right to "operate and maintain a railroad" on a public street does not carry by implication the right to erect and maintain a water tank in the street.

4. PRIVATE NUISANCE—USE OF PROPERTY BY RAILROAD COMPANY.

A railroad company has no more right than an individual to so use its property as to unreasonably interfere with the peaceable and comfortable enjoyment by others of their property, or to cause special injury to particular property, without making compensation for the injury.

5. SAME—LOCATION OF RAILROAD STATION ADJACENT TO CHURCH—LIABILITY FOR DAMAGES.

The erection by a railroad company of a water hydrant in a street immediately opposite the center of a church, and only 35 feet distant, and of a station on property on the opposite side of the street, so that the noises and odors and the dust and smoke incident to the stopping and starting of trains at both station and hydrant interfere with services in the church, and render the building unfit for the uses for which it was built, constitutes a private nuisance, which amounts, in legal effect, to a taking of the church property to the extent of the injury done thereto, for which the company may be required to make compensation; and it is no defense to an action for the recovery of such compensation that the structures built by the company are necessary for the operation of its road, or that its trains are operated in a careful and proper manner.

In Error to the Circuit Court of the United States for the District of Kansas.

The First Methodist Episcopal Church of Leavenworth, Kan., is a religious corporation incorporated by special act of the legislature of the territory of Kansas, February 21, 1860, under the name of the First Methodist Episcopal Church, Leavenworth City, Kansas; the act of incorporation declaring "that said corporation by that name shall be capable of making contracts, of suing and being sued, of pleading and being impleaded in all matters whatsoever in all courts of law and equity," and generally it was endowed with all the corporate powers commonly conferred on religious corporations. Shortly after its incorporation, it acquired the title to three lots situated on the north-west corner of Fifth and Choctaw streets, in the central part of the city of Leavenworth, and erected thereon a commodious and valuable church building, which has been used continuously from that time to the present as a house. of public worship and religious exercises by the members of the church, and all others who chose to attend the religious exercises held there. The services, including a Sunday school, were numerously attended, and were held on the Lord's day, and as frequently on other days as is common with Christian churches. The location was a desirable one for a house of worship, the surroundings pleasant and agreeable, and the air in and about the church pure, wholesome, and uncontaminated. These were the conditions surrounding the plaintiff's church building when, in the month of September, 1895, the defendant established a passenger station on the southwest corner of Fifth and Choctaw streets, about 60 feet from the church building, and erected a railroad water hydrant for the purpose of supplying its engines with water, in the center of Choctaw street, about 35 feet from the center of the south wall of the church. The complaint alleges, in substance, that by reason of the erection and use of these structures by the defendant the plaintiff's church building has been rendered of little or no value as a place of worship and religious exercises; that the ringing of bells, the sounding of whistles, the blowing off of steam, and the loud puffing of the defendant's locomotive engines, combined with the smoke, cinders, soot, dust, and foul, noxious, and offensive odors emitted from its engines, and which enter the church, and the noise and rattle of its trains as a result of stopping them at its station and at the water hydrant for the engines to take water, and starting them again, are such as constantly disturb religious exercises in the church, and often compel their cessation for some time; that the smoke, grime, and cinders from the engines which enter the church soil and damage its interior and furniture and the garments of the worshippers; that the odors, noise, smoke, and cinders emitted from the defendant's engines render the church so uncomfortable and undesirable as a place of worship that it has resulted in driving away and diminishing the attendance at church and the Sunday school, and greatly diminishing the income and revenues of the church, and rendered it practically valueless for church purposes, or for any other use. The answer of the defendant was a general denial, and also avers "that all that has been done by the defendant in the matter of running and operating its trains along and over Choctaw street in Leavenworth city, and past the premises alleged to belong to the plaintiff, including the stopping of trains at its passenger depot on Fifth and Choctaw streets, has been done according to law, and under and by virtue of ordinances of the city of Leavenworth, duly passed, approved, and published"; and it was averred that other railroads ran their trains past the plaintiff's church, and that by reason thereof and by reason of the changed conditions in that part of the city, which were fully set forth, the plaintiff's property had become valueless for church purposes. The plaintiff filed a reply denying the allegations of the answer. There was a jury trial, and a verdict and judgment for the plaintiff, and the defendant sued out this writ of error.

Frank Hagerman (Daniel W. Lawler, John H. Atwood, and Willard P. Hall, on the brief), for plaintiff in error.
William Dill (D. Kelso, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The first contention of the plaintiff in error is that the action should have been brought in the name of the trustees of the church, and not in its corporate name. This contention is founded on section 3, art. 12, of the constitution of the state of Kansas, which provides: "The title to all property of religious corporations shall vest in trustees, whose election shall be by the members of such corporations." But by express provision of the special act of incorporation the corporation is authorized to sue on all causes of action in its corporate name. Moreover, if the contention of the plaintiff in error was well founded, no benefit would accrue to it, and no harm come to the plaintiff, on account of the mistake in the name of the plaintiff, but this court would merely direct the substitution of the trustees of the church as plaintiffs in the action. McDonald v. Nebraska (decided present term; C. C. A.) 101 Fed. 171; Howard v. U. S. (decided present term; C. C. A.) 102 Fed. 77. It is not common that two cases occur so exactly alike as the case at bar and the case of Baltimore & P. R. Co. v. Fifth Baptist Church, 108 U. S. 317, 2 Sup. Ct. 719, 27 L. Ed. 739. That was an action brought by the Fifth Baptist Church of Washington City against the railroad company to recover damages resulting to the church building by reason of the erection and maintenance by the railroad company of an engine house and machine shop on a parcel of land adjoining that on which the church stood. The petition in this case was evidently modeled after the complaint in that case, and is the same in substance and legal effect. The alleged source of damage to the church building is the same in both cases, namely, the ringing of bells, sounding of whistles, and other noises, which interrupted religious service, and the smoke, cinders, and dust thrown off by the engines, which entered the church, damaging its interior and furniture, and soiling the garments of the congregation, and the disagreeable and offensive odors proceeding from the engines, which found their way into the church. The facts and the evidence in the two cases are, in substance and legal effect, the same, and the entire charge of the court was taken almost literally from the opinion of the supreme court in that case. In view of these facts, it would be a work of supererogation for this court to enter upon a discussion of questions fully considered and decided by the supreme court in that case, and which are conclusive of the case at bar. The only distinguishing feature in the two cases is one that weakens, rather than strengthens, the case of the plaintiff in error. In that case the rights of the railroad company under its charter and the act of congress were in terms more extensive than are the rights of the defendant in this case. In that case the railroad company had authority conferred upon it by an act of congress "to exercise the same powers, rights, and privileges in the construction of a road in the District of Columbia  *  *  *  which it could exercise under its charter in the construction of a road in Maryland"; and "by its charter it was empowered to make and construct in that state all works whatever

which might 'be necessary and expedient' in order to the proper ct mpletion and maintenance of the road." Based on this grant of power, the defendant in that case requested the court to instruct the jury:

That "the company possessed the right to select the location in question, and to construct, maintain, and use upon it such engine house and other works as were necessary and expedient for the construction, maintenance, and repair of its road and engines, and to occupy the premises for that purpose; and that, if the jury found that the inconveniences complained of were no more nor greater than the natural or probable result of maintaining such engine house and repair shop, or found that in the occupation and use of the property and management of its business the company exercised such reasonable care as a person of ordinary prudence and caution would exercise under the circumstances, it was not liable for any damages."

The court refused to give this instruction and the supreme court affirmed the ruling, saying:

"Plainly, the engine house and repair shop, as they were used by the railroad company, were a nuisance in every sense of the term. They interfered with the enjoyment of property which was acquired by the plaintiff long before they were built, and was held as a place for religious exercises, for prayer and worship; and they disturbed and annoyed the congregation and Sunday school which assembled there on the Sabbath and on different' evenings of the week. That is a nuisance which annoys and disturbs one in the possession of his property, rendering its ordinary use or occupation physically uncomfortable to him. For such annoyance and discomfort the courts of law will afford redress by giving damages against the wrongdoer, and, when the cause of the annoyance and discomfort is continuous, courts of equity will interfere, and restrain the nuisance. Crump v. Lambert, L. R. 3 Eq. 409. The right of the plaintiff to recover for the annoyance and discomfort to its members in the use of its property, and the liability of the defendant to respond in damages for causing them, are not affected by their corporate character. Private corporations are but associations of individuals united for some common purpose, and permitted by the law to use a common name, and to change its members without a dissolution of the association. Whatever interferes with the comfortable use of their property for the purposes of their formation is as much the subject of complaint as though the members were united by some other than a corporate tie. Here the plaintiff, the Fifth Baptist Church, was incorporated that it might hold and use an edifice, erected by it, as a place of public worship for its members and those of similar faith meeting with them. Whatever prevents the comfortable use of the property for that purpose by the members of the corporation, or those who, by its permission, unite with them in the church, is a disturbance and annoyance, as much so as if access by them to the church was impeded, and rendered inconvenient and difficult. The purpose of the organization is thus thwarted. It is sufficient to maintain the action to show that the building of the plaintiff was thus rendered less valuable for the purposes to which it was devoted. The liability of the defendant for the annoyance and discomfort caused is the same, also, as that of individuals for a similar wrong. The doctrine which formerly was sometimes asserted, that an action will not lie against a corporation for a tort, is exploded. The same rule, in that respect, now applies to corporations as to individuals. They are equally responsible for injuries done in the course of their business by their servants. This is so well settled as not to require the citation of any authorities in its support. It is no answer to the action of the plaintiff that the railroad company was authorized by act of congress to bring its track within the limits of the city of Washington, and to construct such works as were necessary and expedient for the completion and maintenance of its road, and that the engine house and repair shop in question were thus necessary and expedient; that they are skillfully constructed; that the chimneys of the engine house are higher than required by the building regulations of the city; and that as little smoke and noise are caused as the nature of the business in them will permit. In the first place, the authority of the company to construct

such works as it might deem necessary and expedient for the completion and maintenance of its road did not authorize it to place them wherever it might think proper in the city, without reference to the property and rights of others. As well might it be contended that the act permitted it to place them immediately in front of the president's house, or of the Capitol, or in the most densely populated locality. Indeed, the corporation does not assert a right to place its works upon property it may acquire anywhere in the city. Whatever the extent of the authority conferred, it was accompanied with this implied qualification; that the works should not be so placed as by their use to unreasonably interfere with and disturb the peaceful and comfortable enjoyment of others in their property. Grants of privileges or powers to corporate bodies, like those in question, confer no license to use them in disregard of the private rights of others, and with immunity for their invasion. The great principle of the common law, which is equally the teaching of Christian morality, so to use one's property as not to injure others, forbids any other application or use of the rights and powers conferred. Undoubtedly, a railway over the public highways of the District, including the streets of the city of Washington, may be authorized by congress, and if, when used with reasonable care, it produces only that incidental inconvenience which unavoidably follows the additional occupation of the streets by its cars, with the noises and disturbances necessarily attending their use, no one can complain that he is incommoded. Whatever consequential annoyance may necessarily follow from the running of cars on the road with reasonable care is damnum absque injuria. The private inconvenience in such case must be suffered for the public accommodation."

The defendant in the case at bar neither alleged in its answer nor proved on the trial that it had authority from the city of Leavenworth, or from any other source, to locate its station where it did, or its water hydrant in Choctaw street, or elsewhere in the city. All that is disclosed on the subject of the right of the defendant to operate its trains in the city at all is contained in this statement found in the record:

"The defendant offered in evidence its contract with the terminal railway, which gives it the right to carry on its business over the tracks of the terminal railway, and the ordinance of Leavenworth granting the right to the terminal railway and its assigns to operate and maintain the railroad upon Choctaw street."

It will be observed that, according to this statement, the ordinance did not purport to do more than to grant to the defendant's assignor or lessor the right "to operate and maintain the railroad upon Choctaw street." The right to erect and maintain stations and water tanks or hydrants on or in the street is not granted, unless it is to be implied from the grant to operate and maintain a railroad upon the street; but certainly no such implication arises as to the water hydrant erected in the street from the mere license "to operate and maintain the railroad" on the street. A witness testified that "the disturbance to the church came from the trains which were using the water station." This nuisance was intensified by the circumstance that going in one direction from the water hydrant was a steep grade, and, in order to start the trains, that stopped to take water, up that grade, the puffing of the engines was louder and continued longer, and the volume of smoke and cinders given off much greater, than in starting a train on a level grade, and greater still than that resulting from keeping a moving train in motion. This stopping and starting trains at the hydrant in the middle of the street opposite the center of the

church constituted a private nuisance of a very aggravated character, for which the law will afford relief to the extent of the damages sustained. Whatever the fact may be, no complaint is made in the petition in this case on account of the mere movement of trains over the defendant's track in the street. It is the consequences flowing from the use of the street and its track for other purposes than merely moving its trains that is complained of. The gravamen of the complaint against the defendant, as stated in the petition, is:

"That, by reason of the close proximity of the said depot and watering station to the property of said plaintiff, many trains and engines stop immediately under and within a few feet of the windows and doors on the south side of plaintiff's church building on the Sabbath day and other days during the hours when religious services are being held in said church and while the Sabbath school is being held therein, and the said defendant's trains and engines make loud and incessant noises during said services by blowing off steam from said engines, ringing the bells of said engines, blowing the whistles thereof, backing and jamming together the cars of said trains in getting the engines in position for said depot, and to take water from said watering station, and by the puffing of said engines, the blowing of the whistles thereof, and the rattle and noise of said engines and trains running over the tracks of said roads and the action of the pumps on said engines; all to the discomfort and annoyance and damage of said plaintiff, as hereinafter more specifically set out and alleged."

Granting, therefore, that the defendant had a right to run its trains over the track on Choctaw street, and that it was not liable for any damages unavoidably resulting therefrom, this concession falls far short of supporting the defense in this action. It did more than run its trains over its track. It erected a station, at which its passenger trains stopped, and a water hydrant in the middle of the street, under the very windows of the church, at which all its trains, freight and passenger, stopped to take water. It must be accepted as settled in the jurisprudence of this country that neither by legislative enactment nor by ordinance of the city can the use of a public street be granted to a private corporation for uses which constitute a private nuisance, and result in special injury to the abutting owners of property on the street, except upon making compensation for such injury. The erection, maintenance, and use of a station on, and a water hydrant in, Choctaw street in such close proximity to the plaintiff's church, which had the effect to envelope the church in smoke, and fill the edifice with offensive odors, and introduce into it more or less smoke and cinders, constituted a private nuisance for which the law will afford redress. It was not competent for the city to make a grant to the railroad company which would exempt it from liability to the abutting owner for maintaining such a private nuisance. But the city made no such grant, either expressly or by implication.

The rule that no one will be heard to complain of the proper exercise of a lawful authority cannot be invoked to shield the defendant in this case. The railroad company had no authority to erect its water hydrant where it did, and, conceding that it had a right to operate its trains over the track on Choctaw street, and assuming, but not deciding, that it had the right to erect and use a passenger station on the street, yet if, in the use of its station, the

smoke, cinders, and smells from its engines which stopped there constituted a private nuisance, and resulted in special damages to the adjoining church property, the company is liable.    Conceding that the noise, vibrations, and inconveniences and annoyances which are unavoidable in the lawful running of trains over a railroad track, and which are common to the whole public and to all the abutting owners of property on the street, are not actionable injuries, the plaintiff's right of action is not affected thereby.    The smoke, cinders, and offensive smells, and loud and protracted noises which constitute the nuisance to the plaintiff are not the usual and unavoidable result of the mere operation of the defendant's trains over its track laid in the street, but they result from other uses by the defendant of the street and its track in the immediate vicinity of the plaintiff's property, which do not affect in a like injurious manner the public generally, or other abutting owners of property on the street.    The smoke, cinders, offensive smells, and loud and protracted noises which are a nuisance to the plaintiff are not the consequential and unavoidable damages due from a lawful running of the defendant's trains over its track in the street, but result from the erection and use by the defendant of its water hydrant and station, the one in and the other on the street, in close proximity to the plaintiff's church, and which do not affect in a like injurious manner the public generally, or other property situated elsewhere on Choctaw street.    In legal effect, the nuisance resulting from the use made of these structures by the defendant constitutes a partial taking of the plaintiff's property, for which compensation must be made. Stevens v. Railroad Co. (Super. N. Y.) 8 N. Y. Supp. 313; Lahr v. Railroad Co., 104 N. Y. 295, 10 N. E. 528; Kane v. Railroad Co., 125 N. Y. 186, 26 N. E. 278, 11 L. R. A. 640; Drucker v. Railway Co., 106 N. Y. 157, 12 N. E. 568; Duyckinck v. Railroad Co., 125 N. Y. 710, 26 N. E. 755; Cogswell v. Railroad Co., 103 N. Y. 10, 8 N. E. 537; Peyser v. Railroad Co., 13 Daly, 122; Smith v. Railroad Co. (Com. Pl.) 18 N. Y. Supp. 132; Bohm v. Railway Co., 129 N. Y. 576, 29 N. E. 802, 14 L. Ed. 344.    If two private citizens own adjacent lots, one of them cannot establish and maintain on his own lot a nuisance which has the effect of depriving his neighbor of any beneficial use of his lot without making compensation for the injury; and no more can a private corporation erect and maintain a nuisance on its own premises, or in a public street, which has the effect to deprive an adjacent or abutting owner of the beneficial use of his property, without making compensation for the injury.    There is no such thing as a natural person or a private corporation having a "lawful right" to invade the premises of an abutting owner, and appropriate his property; and there is no difference in principle between an actual physical invasion of one's property and the creation and maintenance of a nuisance which has the effect to deprive him of his beneficial use.    The abutting owners of property on a public street have as good right to the free enjoyment of the easements of light and air as they have of their property itself.    Without the free enjoyment of these easements, they could have no beneficial use of their property.    And it is well settled that filling the air with smoke, cinders,

and offensive odors materially injures the easements of light and air, to the free enjoyment of which the abutting owners of property upon a street have a legal right, and constitutes, in legal effect, a taking of property. Cases cited supra. The defendant can no more escape making compensation for such damages than it could appropriate the plaintiff's church to its own use without making compensation therefor. The defendant did not claim or show that different and more suitable locations for these structures could not be found. It was shown that its freight station was two blocks west of the church, notwithstanding which it located its water hydrant, where all its trains stopped to take water, in the middle of the street, and within 35 feet of the church. If it does not desire to make compensation for the nuisance thus created, it must remove it. In this connection the remarks of the supreme court in Baltimore & P. R. Co. v. Fifth Baptist Church, supra, are appropriate: .

"If, as asserted by the defendant, the noise, smoke, and odors, which are the cause of the discomfort and annoyance to the plaintiff, are no more than must necessarily arise from the nature of the business carried on with an engine house and workshop as ordinarily constructed, then the engine house and workshop should be so remodeled and changed in their structure as to prevent, if that be possible, the nuisance complained of; and, if that be not possible, they should be removed to some other place, where, by their use, the plaintiff would not be thus annoyed and disturbed in the enjoyment of its property. There are many places in the city sufficiently distant from the church to avoid all cause of complaint, and yet sufficiently near the station of the company to answer its purposes. There are many lawful and necessary occupations which, by the odors they engender, or the noise they create, are nuisances when carried on in the heart of a city,—such as the slaughtering of cattle, the training of tallow, the burning of lime, and the like. Their presence near one's dwelling house would often render it unfit for habitation. It is a wise police regulation, essential to the health and comfort of the inhabitants of a city, that they should be carried on outside of its limits. Slaughter houses, lime kilns, and tallow furnaces are, therefore, generally removed from the occupied parts of a city, or located beyond its limits. No permission given to conduct an occupation within the limits of a city would exempt the parties from liability for damages occasioned to others, however carefully they might conduct their business. Fish v. Dodge, 4 Denio, 311."

The judgment of the circuit court is affirmed.