THOMPSON v. KIMBALL et ux.

No. 13591.

Circuit Court of Appeals, Eighth Circuit.

Jan. 26, 1948.

Yale C. Holland, of Omaha, Neb. (J. A. C. Kennedy and George L. DeLacy, both of Omaha, Neb., on the brief), for appellant.

Hugh J. Boyle, of Omaha, Neb. (Bernard J. Boyle, of Omaha, Neb., on the brief), for appellees.

Before GARDNER, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

To recover damages for an alleged nuisance the appellees brought this action in the state court of Nebraska against the Trustee in Bankruptcy of the Missouri Pacific Railroad Company, Debtor. The case was removed to the federal court on the ground of diversity of citizenship, was tried to the court without a jury, judgment was rendered in favor of the plaintiffs for $1,000, and the defendant appeals.

The following facts necessary to an understanding of the controversy are found in the record:

Since 1934 or prior thereto the plaintiff Marion Kimball has owned and resided with her husband, George Kimball, the other plaintiff, in a dwelling house located at 1502 Yates Street, in Omaha, Nebraska. The defendant is a common carrier. It operates a busy switchyard located immediately east of plaintiff's residence. The switchyard, in use and operation since prior to 1926, comprises a main line track and ten tracks immediately west of the main line track, the most westerly track being situated at the foot of a bluff about 100 or 125 feet east of plaintiffs' house. The tracks all run north and south. The track nearest plaintiffs' residence is a scale track where cars are weighed. The other nine tracks are used for switching cars. Freight trains are made up and broken up in the yard where between 1000 and 1100 freight cars are handled daily. The switching operations are carried on by switch crews using coal burning switch engines. Fourteen separate crews were employed in the yard, each crew working an eight-hour shift. Some of the crews operated the same engine continuously while in other cases a crew going to work took over an engine which had been in use by another

crew. During the eight-hour shift each crew had a twenty-minute lunch period.

The defendant's Grace Street yard office is located on the west side of the switchyard one block south of plaintiffs' residence. The bodies of two box cars located on the ground a few feet north of the yard office building on the west side of the tracks adjacent to the scale track were used as locker and lunch rooms by the switch crews.

In accordance with an order of the Interstate Commerce Commission an engine continued in use through two shifts was required to be inspected by the engineer going off duty and also by the engineer coming on duty. These inspections required about twenty minutes and could be made only while the engine was standing still. Some of the switch crews left their engines standing idle during their twenty-minute lunch period. While engines were thus left standing idle for inspection or while their crews were at lunch they were left either on the scale track or in some instances on the track next to it. When the engine was so standing idle the fireman shook the ashes out of the grates and built up the fire by adding coal. This process caused the engine to emit quantities of smoke, soot, cinders and steam.

Since the scale track was not used for switching purposes and the other tracks were so used, engines left standing idle for inspection or while their crews were at lunch were usually spotted somewhere on the scale track between Grace street and the corner of Yates street about 300 feet distant.

In their petition the plaintiffs allege:

"That beginning in the summer of 1937 and up to and including the present time the defendant by and through its employees and agents * * * frequently, continually and repeatedly caused said engines and locomotives operated and used in connection with said yards and tracks to stand at a point in close proximity to plaintiff's property, that is, on the first track east of plaintiff's premises and that while said engines and locomotives were so standing and stationary they were caused by defendant, its agents and employees, to discharge and emit large clouds of smoke, dust, dirt, soot, cinders, noxious vapors, unnatural impurities and steam; that said smoke, dust, dirt, soot, cinders, noxious vapors, unnatural impurities and steam from said engines and locomotives were blown, cast upon and against and into said dwelling house on plaintiff's furniture, fixtures, clothing, and personal belongings, and in this connection plaintiff alleges that the said acts so committed by the defendant, its employees and agents, constitute a nuisance and were and have been a continuing nuisance during the period of time alleged in this paragraph; * * * and as a direct and proximate result of said nuisance so created, the property of the plaintiff has been and will be permanently damaged and diminished in value * * *."

No damage is claimed for injury from smoke emitted by engines left standing at the yard office or near the lunch and locker rooms, or from engines in operation or moving in the switchyards. And no damage is claimed for injury occurring prior to 1937.

The answer admits the ownership and operation of the switchyards in Omaha and the ownership and location of plaintiffs' residence, and alleges that plaintiffs acquired their property long after the location of the railroad and assumed the risk and inconveniences incident to its proximity to the switchyards.

On this appeal the contentions of the defendant may be summarized as follows: 1. The record does not support the findings of the court, and 2. The court's conclusions are contrary to law.

Although the evidence was conflicting it was sufficient to support the finding of the court that the employees of the defendant spotted an engine four or five times a day for about twenty minutes on the scale track or the track adjoining it just opposite plaintiffs' house or approximately 50 feet south thereof for the purpose of inspection or during the crew's lunch period, and that the smoke emitted therefrom damaged plaintiffs' property.

The vital holding of the court was that it was unnecessary in the ordinary, necessary and practical operation of the defendant's switchyard to spot the engines

so near plaintiffs' residence for the purpose of inspection or during the lunch periods. The conclusion to be drawn from the findings is that the court was of the opinion that the engines could as well have been spotted for these purposes further south in the 300 foot block nearer to the Grace street station, or somewhere else in the switchyard which was more than a mile in length from north to south. The court concluded that spotting the engines nearer plaintiffs' property than was found necessary resulted in an unnecessary nuisance; that more smoke, steam, etc. was thrown upon plaintiffs' property than upon their neighbors' property; and that smoke, soot, etc. were thrown upon plaintiffs' property in excessive, unreasonable and unnecessary amounts resulting in special damages which plaintiffs were entitled to recover.

■ The rights of the parties are determinable under the Nebraska law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

Article I, section 21, of the Constitution of Nebraska provides that "The property of no person shall be taken or damaged for public use without just compensation."

The plaintiffs' theory and contention are that under the foregoing constitutional provision the exercise of ordinary care or the negligence or non-negligence of the railroad company is not involved in this suit; that damages to adjacent property due to the operation of a railroad, which damages are not common to the public at large, may be recovered by the property owner in an action at law. In accordance with this theory there is no charge in the petition of negligence in the operation of defendant's switchyard. Nor is there any charge that the smoke, soot, cinders and steam cast upon the plaintiffs' house and premises were at any time in "excessive and unreasonable amounts." There is no evidence in the record by which one can fix a standard of a reasonable or an unreasonable amount of smoke under the circumstances, nor by which to determine that the amount discharged by the engines exceeded the amount necessary in the proper firing of the engines. The only con-

clusion to be drawn from the pleadings and the evidence is that the engines were not negligently fired or operated.

The defendant's theory and contention is that a cause of action under article 1, section 21, of the Nebraska Constitution for damages to property adjacent to a railroad right of way due to smoke or other objectionable features incident to the ordinary operation of engines, and which are common to the public at large, accrues at the time the right of way is acquired and dedicated to public use, and that plaintiffs having purchased their property long after the defendant's switchyard was acquired and put in use cannot recover for damages incident to the ordinary and prudent operation of its engines in the absence of proof of negligence. In his answer the defendant Trustee alleged that the smoke, soot, etc., to which plaintiffs' property has always been subject are incident to its proximity to the railroad yard and that such smoke, etc., "as has been carried to this property has been incident to necessary operations in the ordinary and practical operation of the railroad yard."

On this issue the court found "The evidence does not establish that it was necessary in the ordinary and practical operations of the defendant's switchyard to spot engines regularly at the points" immediately east or a little southeast of plaintiffs' property.

The evidence shows without dispute that the distance from the street corner at Yates street where plaintiffs' house stands to the Grace street crossing is approximately 300 feet. The bank on the west side of the yards on which plaintiffs' house stands extends from plaintiffs' house to Grace street and houses are built up all the way along the top of that bank.

The defendant's evidence showed that it was necessary in the operation of the yards to spot engines three or four times a day for about twenty minutes on the scale track near the Grace street station for the purpose of changing crews or to give the crews time for lunch. This evidence is not disputed. The dispute relates to the place on this 300 feet of track where the engines

were spotted. The plaintiffs' evidence was to the effect that they were unnecessarily spotted opposite their house or about 50 feet south thereof while the defendant's evidence was to the effect that they were spotted farther south near the locker and lunch cars. The finding of the court as to the place where the cars were spotted at these times is supported by substantial evidence. The defendant's position on this point is that since the prudent and ordinary operation of the switchyard required the engines to be spotted on the scale track for purposes of inspection and to permit the crews to have lunch at the lunch room, and since dwelling houses were standing along the top of the bank from plaintiffs' residence to Grace street, the defendant had a right to spot the engines at any point found to be convenient by the switch crew at the time and that plaintiffs had no basis for complaining that their premises were subjected to any burden not common to the public at large.

The situation presented gives rise to certain legal propositions raised in the arguments and exceptions. The first of these is whether the damages sustained by plaintiffs were special to them. The court found that such damage "was special to the plaintiffs and in excess of that sustained by others owning homes in the vicinity of the plaintiffs' house * * *."

In the case of Omaha & N. P. R. Co. v. Janecek, 30 Neb. 276, 46 N.W. 478, 27 Am. St.Rep. 399, the plaintiff sought to recover damages for the depreciation in value of his property by the construction and operation of the defendant's railroad in front of his premises. The Supreme Court of Nebraska in construing section 21, of article 1, of the State Constitution, supra, said, "If the property has been depreciated in value, by reason of the public improvement, which the owner has specially sustained, and which is not common to the public at large, a recovery may be had."

This rule is relied upon by the plaintiffs and adopted by the court as sustaining the finding of special damage. The court found special damages because the smoke, soot, etc. thrown upon plaintiffs' property were in excess of that thrown upon other property in the vicinity of plaintiffs' home and premises. That excess was due to two elements present in the situation: first, the proximity of plaintiffs' house to the railroad tracks; and, second, the use of the track nearest the house, that is, the scale track, by the defendant as a convenient place to spot its engines for necessary purposes, when, as claimed by plaintiffs and found by the court, they might have been spotted elsewhere.

■ No citation of authority is necessary to demonstrate that in so far as the smoke, soot, etc. thrown upon plaintiffs' property are due to the proximity of their property to the railroad tracks there can be no recovery of damages. Such injury as results from that fact is "common to the public at large." Any difference in amount is one of degree only. Carroll v. Wisconsin Cent. R. Co., 40 Minn. 168, 41 N.W. 661, 662. All homes constructed near a railroad or acquired after the railroad has been located and put in use are subject to the inconveniences necessarily incident to the reasonable operation of the railroad as a public utility. See Louisville & N. Terminal Co. v. Lellyett, 114 Tenn. 368, 85 S.W. 881, 1 L.R.A.,N.S., 49, and cases cited.

■ We next inquire what damage, if any, is recoverable because four or five times a day, an engine is spotted near plaintiffs' property when it might have been spotted a little further south toward Grace street. The undisputed evidence, as stated supra, shows that homes are built up all along the bank on which plaintiffs' house stands south to Grace street. But plaintiff George F. Kimball testified with reference to the relative amount of smoke and soot cast upon his house by the standing engines that "We have the corner house and our house gets it worst." Again, the excess complained of is one of degree only. When engines are spotted farther south for similar necessary purposes the neighboring property "gets it worst." In other words, the injury complained of is "common to the public" whose property is situated as are plaintiffs' premises near the switchyard.

■ The question remains whether in the practical operation of the defendant's switchyard it was necessary to spot engines for the purposes here involved on the

scale track at the west side of the switch-yard. On this question the testimony of Howard F. Kaho, defendant's chief operating officer at Omaha from 1917 to 1947, is undisputed. The scale track, it will be remembered, was the only one of the defendant's yard tracks not used for switching purposes. Mr. Kaho was asked and answered: "Q. . . . was there anything you could have done about moving that engine some place else without interfering with the ordinary operation of the yard and the method of procedure in handling the yard work? A. If the engines were sitting in another part of the yard they would interfere with the operation of the other engines, and sitting on another track they would interfere with the use of that track by some other engine. That is the convenient place and that is why the water tank and the blow-off box were located there."

Under all the circumstances in evidence we perceive no basis for the recovery of special damages by plaintiffs because of the spotting of engines on the scale track for necessary purposes east or southeast of their premises. No Nebraska case has been called to our attention which will justify the judgment upon this ground.

 Again, notwithstanding the officers of the defendant railroad testified that no change had been made in the railroad switchyard or in the use thereof after 1926, the plaintiffs testified that the scale track and the track adjacent to it were constructed after they had acquired their property. On this basis they contend that they are entitled to recover damages under the guaranty of article 1, section 21, of the Nebraska Constitution, supra. On this point the court made no special finding of fact, but it did find on conflicting evidence that the defendant did not spot its engines for any purpose north of the Grace street station prior to 1937. The legal effect sought to be attributed to this evidence and this finding is that the construction or use of the two western tracks of defendant's yard after plaintiffs acquired their property cast a new burden upon their house and premises which did not exist before that time and that for such added burden by way of inconvenience due to smoke and soot from engines they were entitled to recover dam-

ages. The point thus posed was settled by the Supreme Court of Nebraska in the case of Chicago, B. & Q. R. Co. v. O'Connor, 42 Neb. 90, 60 N.W. 326, 330, where the court said:

" * * * the evidence shows that within four years prior to the bringing of this suit the railway company constructed in the street, opposite the O'Connor property, an additional side track for use in connection with its coal house. This did not confer upon O'Connor any cause of action against the railway company. If a railway company condemns real estate for the erection thereon of a road, and builds one track thereon, then we are of opinion that the building of one or more additional tracks on the same right of way, and on the same profile or grade, that such additional tracks should be construed to be within the purview and purposes of the original condemnation."

In the O'Connor case the Court, at page 329 of 60 N.W., quoted with approval the following statement from Omaha & R. V. R. Co. v. Moschel, 38 Neb. 281, 56 N.W. 875: "That the plaintiff could, and if he did or did not, within four years after the date of building of said original railroad on said lot and across said street adjacent to his property, bring suit for damages for the depreciation in value of his premises, caused by such railroad construction and operation, then every element of damages, past and future, that was or would have been properly admissible in that suit, either in matters of construction or operation, must be excluded from consideration in this case." The court also stated that all elements of damage to property by reason of building a railroad in front of it and its continuous and proper operation must be included in the original settlement of damages; that it is common knowledge that a railway cannot be operated without smoke and soot; and that these things are within the realm of what would probably result from the proper and ordinary operation of the railway as constructed and are a part of the damages properly sustained by the original location and use of the railway.

But plaintiffs contend that their claim for damages comes within an exception to the foregoing rules, which exception is noted in

the opinion in the O'Connor case, supra. The exception there noted is that if after a railway company had laid its tracks and the damages caused thereby have accrued and have been adjudicated and settled the company should build an embankment in the street in front of the property involved or should make a cut in the street in front of the property for the use of its tracks, then such embankment or cut would be an additional burden on the property presumably not within the purview of the original location, construction or operation of the railroad. Other cases also are cited holding that the building of a coal house, a round house, or other structure involving a use not originally contemplated may constitute an additional burden upon neighboring property for which recoverable or special damages may result. See Chicago G. W. R. Co. v. First M. E. Church, 8 Cir., 102 F. 85, 50 L.R.A. 488. It is sufficient to say that none of these things have happened in this case. The only basis for damages claimed here is for spotting an engine for fifteen or twenty minutes four or five times a day in front of or near plaintiffs' premises. For the reasons stated supra we are of the opinion that the court erred in holding that by so doing the defendant created an "unnecessary nuisance" or a private rather than a public nuisance; and that the case is within the recognized rule that a railroad company, in Nebraska, as elsewhere, is not liable to neighboring property owners after damages for the original location and construction of the railway have been settled or have been barred by the statute of limitations for ordinary damages attributable to the operation of the railroad, in the absence of proof of negligence. Richards v. Washington Terminal Co., 233 U.S. 546, 553, 34 S.Ct. 654, 58 L.Ed. 1088, L.R.A.1915A, 887. We do not think article 1, section 21, of the Constitution of Nebraska, supra, requires a different conclusion. The O'Connor case, supra, was decided by the Supreme Court of Nebraska several years after article 1, section 21, of the Constitution as it now reads was adopted, and that decision must be accepted as a correct application of the constitution of the state.

We have examined with care all the cases cited and relied upon in support of plaintiffs' theory of a private or unnecessary nuisance, and we think they are all distinguishable from the present case. No useful purpose could be served by further analyzing the authorities here. The judgment appealed from is reversed.