JESSE ROGERS *vs.* THOMAS P. ELLIOTT.

Barnstable. January 31, 1888. — March 3, 1888.

Present: MORTON, C. J., DEVENS, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Private Nuisance — Bell Ringing — Malice.*

The custodian of a church does not, by refusing to stop the ringing of its bell for the usual services, become liable to a person suffering from sun-stroke in an adjacent house, who is thrown thereby into convulsions which retard his recovery.

TORT for a nuisance, namely, the ringing of a church bell. At the trial in the Superior Court, before *Staples*, J., there was evidence tending to prove that the plaintiff, who lived with his father in a thickly settled portion of Provincetown, had received a sun-stroke, and was carried home and a physician called to attend him; that directly opposite his father's house across a street but twenty feet in width was a Roman Catholic Church, of which the defendant was the clergyman in charge; that one of the incidents of the plaintiff's illness was that loud noises might throw him into convulsions; that the defendant was in-

formed by the physician and the plaintiff's father of the prob-
able consequences to the plaintiff of the ringing the bell upon
his church, and was requested not to ring it; that the defendant
refused to refrain from ringing the bell, but caused it to be rung
eight times upon the next Sunday, as usual, twice before each
of the four services held upon that day; that the plaintiff, the
windows of whose room were shut, was thrown into violent and
painful convulsions at each time that the bell on the church was
rung, as well as when other bells in the town were rung, or a
whistle on a steamboat in the harbor was blown, and once when
the town clock struck; and that the convulsions increased the
illness and retarded the recovery of the plaintiff.

The judge ruled that the plaintiff was not entitled to recover,
and ordered a verdict for the defendant; and reported the case
for the determination of this court. If the ruling was wrong,
the verdict was to be set aside and a new trial granted; other-
wise, judgment was to be rendered on the verdict.

*H. M. Knowlton*, for the plaintiff, stated in his brief, that
"the plaintiff does not rely upon any evidence of express mal-
ice on the part of the defendant. But he claims that, under all
the circumstances of the case, the law would imply malice on
his part."

*J. J. McDonough*, for the defendant.

KNOWLTON, J. The defendant was the custodian and author-
ized manager of property of the Roman Catholic Church used
for religious worship. The acts for which the plaintiff seeks to
hold him responsible were done in the use of this property, and
the sole question before us is whether or not that use was un-
lawful. The plaintiff's case rests upon the proposition that the
ringing of the bell was a nuisance. The consideration of this
proposition involves an inquiry into what the defendant could
properly do in the use of the real estate which he had in charge,
and what was the standard by which his rights were to be
measured.

It appears that the church was built upon a public street in a
thickly settled part of the town, and if the ringing of the bell on
Sundays had materially affected the health or comfort of all in
the vicinity, whether residing or passing there, this use of the
property would have been a public nuisance, for which there

would have been a remedy by indictment. Individuals suffering from it in their persons or their property could have recovered damages for a private nuisance. *Wesson* v. *Washburn Iron Co.* 13 Allen, 95.

In an action of this kind, a fundamental question is, by what standard, as against the interests of a neighbor, is one's right to use his real estate to be measured. In densely populated communities the use of property in many ways which are legitimate and proper necessarily affects in greater or less degree the property or persons of others in the vicinity. In such cases the inquiry always is, when rights are called in question, what is reasonable under the circumstances. If a use of property is objectionable solely on account of the noise which it makes, it is a nuisance, if at all, by reason of its effect upon the health or comfort of those who are within hearing. The right to make a noise for a proper purpose must be measured in reference to the degree of annoyance which others may reasonably be required to submit to. In connection with the importance of the business from which it proceeds, that must be determined by the effect of noise upon people generally, and not upon those, on the one hand, who are peculiarly susceptible to it, or those, on the other, who by long experience have learned to endure it without inconvenience; not upon those whose strong nerves and robust health enable them to endure the greatest disturbances without suffering, nor upon those whose mental or physical condition makes them painfully sensitive to everything about them.

That this must be the rule in regard to public nuisances is obvious. It is the rule as well, and for reasons nearly if not quite as satisfactory, in relation to private nuisances. Upon a question whether one can lawfully ring his factory bell, or run his noisy machinery, or whether the noise will be a private nuisance to the occupant of a house near by, it is necessary to ascertain the natural and probable effect of the sound upon ordinary persons in that house, — not how it will affect a particular person, who happens to be there to-day, or who may chance to come to-morrow. *Fay* v. *Whitman*, 100 Mass. 76. *Davis* v. *Sawyer*, 133 Mass. 289. *Walter* v. *Selfe*, 4 DeG. & Sm. 315, 323. *Soltau* v. *De Held*, 2 Sim. (N. S.) 133. *St. Helen's Smelting Co.* v. *Tipping*, 11 H. L. Cas. 642.

In *Walter* v. *Selfe*, Vice-Chancellor Knight Bruce, after elaborating his statement of the rule, concludes as follows : "They have I think established that the defendant's intended proceeding will, if prosecuted, abridge and diminish seriously and materially the ordinary comfort of existence to the occupier and inmates of the plaintiff's house, whatever their rank or station, whatever their age, or whatever their state of health."

It is said by Lord Romilly, Master of the Rolls, in *Crump* v. *Lambert*, L. R. 3 Eq. 409, that "the real question in all the cases is the question of fact, viz. whether the annoyance is such as materially to interfere with the ordinary comfort of human existence."

In the opinion in *Sparhawk* v. *Union Passenger Railway*, 54 Penn. St. 401, these words are used: "It seems to me that the rule expressed in the cases referred to is the only true one in judging of injury from alleged nuisances, viz. such as naturally and necessarily result to all alike who come within their influence."

In the case of *Westcott* v. *Middleton*, 16 Stew. (N. J.) 478, it appeared that the defendant carried on the business of an undertaker, and the windows of the plaintiff's house looked out upon his yard, where boxes which had been used to preserve the bodies of the dead were frequently washed, and where other objects were visible and other work was going on, which affected the tender sensibilities of the plaintiff, and caused him great discomfort. Vice-Chancellor Bird, in dismissing the bill for an injunction against carrying on the business there, said: "The inquiry inevitably arises, if a decision is rendered in Mr. Westcott's favor, because he is so morally or mentally constituted that the particular business complained of is an offence or a nuisance to him, or destructive to his comfort or his enjoyment of his home, how many other cases will arise and claim the benefit of the same principle, however different the facts may be, or whatever may be the mental condition of the party complaining. . . . A wide range has indeed been given to courts of equity in dealing with these matters; but I can find no case where the court has extended aid unless the act complained of was, as I have above said, of a nature to affect all reasonable persons, similarly situated, alike."

If one's right to use his property were to depend upon the effect of the use upon a person of peculiar temperament or disposition, or upon one suffering from an uncommon disease, the standard for measuring it would be so uncertain and fluctuating as to paralyze industrial enterprises. The owner of a factory containing noisy machinery, with dwelling-houses all about it, might find his business lawful as to all but one of the tenants of the houses, and as to that one, who dwelt no nearer than the others, it might be a nuisance. The character of his business might change from legal to illegal, or illegal to legal, with every change of tenants of an adjacent estate; or with an arrival or departure of a guest or boarder at a house near by; or even with the wakefulness or the tranquil repose of an invalid neighbor on a particular night. Legal rights to the use of property cannot be left to such uncertainty. When an act is of such a nature as to extend its influence to those in the vicinity, and its legal quality depends upon the effect of that influence, it is as important that the rightfulness of it should be tried by the experience of ordinary people, as it is, in determining a question as to negligence, that the test should be the common care of persons of ordinary prudence, without regard to the peculiarities of him whose conduct is on trial.

In the case at bar it is not contended that the ringing of the bell for church services in the manner shown by the evidence materially affected the health or comfort of ordinary people in the vicinity, but the plaintiff's claim rests upon the injury done him on account of his peculiar condition. However his request should have been treated by the defendant upon considerations of humanity, we think he could not put himself in a place of exposure to noise, and demand as of legal right that the bell should not be used.

The plaintiff, in his brief, concedes that there was no evidence of express malice on the part of the defendant, but contends that malice was implied in his acts. In the absence of evidence that he acted wantonly, or with express malice, this implication could not come from his exercise of his legal rights. How far and under what circumstances malice may be material in cases of this kind, it is unnecessary to consider.

*Judgment on the verdict.*