(43 South. 882.)

No. 16,165.

FROELICHER v. SOUTHERN MARINE WORKS.

(March 4, 1907. On Rehearing, April 15, 1907.)

1. NUISANCE—INJURY.

Plaintiff complains of nuisance, and claims damages on that ground.

2. SAME—USE OF PROPERTY—ALTERAM NON.

Every person is bound to use his property in such a way as not to cause sensible discomfort nor diminish the value of the property of others.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Nuisance, §§ 1–8.]

3. SAME—ABATE NOISE AND OTHER NUISANCE OR CLOSE SHOP.

In a town one may be subjected to some inconvenience, to which, however, there is a limit. The hum and noise of the machine shops and iron works, the odor and steam therefrom, must be abated, or the shops entirely closed.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred Durieve King, Judge.

Action by Dominick Froelicher against the Southern Marine Works. Judgment for plaintiff. Defendant appeals. Modified and affirmed.

Solomon Wolff and Gustave Lemle, for appellant. Lazarus, Michel & Lazarus and David Sessler, for appellee.

BREAUX, C. J. Plaintiff asks for judgment against defendant in the sum of $15,000 for injury to himself and family and loss in the value of his property.

The district court rendered judgment in his favor for $10,000.

Defendant appealed.

This is the second suit brought by plaintiff against defendant.

In the language of the defendant's counsel, to quote from their brief:

"This suit is an echo of that of the same plaintiff against the same defendant, at the time the Oswald Iron Works (111 La. 705, 35 South. 821, 64 L. R. A. 228), but now by amendment to the charter, and even before the first case was decided, the Southern Marine Works."

We shall, as briefly as possible, state the issues of the first case, the record of which was made part of the present case. They are in certain particulars pertinent in the present case.

The plaintiff alleged, substantially, in the first case, that he had bought the land in 1884; that he had improved it, erected buildings thereon, in which he conducted his business, and resided with his family, but after that time defendant erected its works near him; that because of defendant's noisy plant, the steam, the rust, and the nauseous odors, the value of his property has been depressed, and its use for business and residential purposes materially injured, and even destroyed.

Plaintiff sought to trace all his asserted grievances to the machine shops facing Morgan street, on the left of his premises, and to the boiler works facing Patterson street, in the rear of his lot on the left. He averred that defendants erected their works without permission of the city council, to which application had been made, but which was not granted.

Plaintiff in the first suit placed the damages in the sum of $2,500, and obtained an injunction.

The decree of the district court in that suit is dated July 2, 1902. It condemned defendant to pay $500 damages, and enjoined it from manufacturing or repairing boilers and tanks in the rear of and contiguous to plaintiff's property.

The lots to which the injunction referred were numbered 15 and 16 on the Lombard sketch of survey.

In other respects plaintiff's demand was rejected.

The petition in the case now before us was filed on the 2d day of February, 1903.

We should have stated before that an ap-

118 LOUISIANA REPORTS.

peal was taken from the decision referred to, rendered by the district court, to this court, and here the decision of the district court was affirmed. The decision here was handed down on the 30th of November, 1903.

We return for a moment to the first case to state that the testimony showed that plaintiff and his family lived upstairs, and he had a saddler's shop and harness shop downstairs, where he also repaired buggies. His trade is that of a saddler and harness maker.

The testimony for plaintiff in the said suit will have it that his house is in a dilapidated condition and in a sad plight; that the noise from the iron works was not bearable; that he and his family were sufferers on that account, it made them irritable, nervous, and at times ill; that they had to seek lodging elsewhere.

The present case was tried in the district court in December, 1904.

We are informed by the record that since the first decision was handed down, the date of which we have given above, defendant has placed its blacksmith's shop, tank, and boiler works on lots 1 and 2, and the machine shop on lots 15 and 16, as also the brazing works. There is also an emery wheel on defendant's premises.

Therefore it must be borne in mind that, prior to the decision before mentioned, the boiler works faced Morgan street; that, after the decision had been handed down, they were moved to the rear of plaintiff's lot (that is, to lots 1 and 2) and the machine shops facing Patterson street removed so as to face Morgan street (that is, moved to lots 15 and 16).

Plaintiff's complaint is that the change has not been of any benefit to him. It has brought him no relief. The noise is louder than ever, and the nuisance more burdensome.

A number of witnesses have been examined; quite a number on behalf of plaintiff, and a larger number on behalf of defendant. Those of plaintiff pretty well sustain the contention of plaintiff, except in a few instances some of them were not as positive as others about the noise and its bad effect. The same may be said of defendant's cause and of its witnesses. Some of them said that it was not desirable nor advisable to live so near machine shops and boiler works.

Plaintiff, in his pleadings and by the testimony of his witnesses, has given a doleful account of the conditions to which he has been driven on account of the iron plant, the noise of its boilers, and machine shops. He sets forth with some particularity the noises from the caulking and riveting of iron, steel tanks, and boilers, the screeching and rumbling noise of the gearing, the hammering of iron, steel, copper, and brass, the screeches of the emery wheel as the tools and pieces are sharpened, the vibrations caused by the heavy moving machinery, the noxious odors from the ferrofix.

Defendant sought to meet plaintiff's complaint and statements of his witnesses by testimony of its witnesses showing a different state of its works. The testimony of its witnesses has it that the machine shops, facing on Morgan street, very near the side wooden wall about 20 inches from plaintiff's house, are not so noisy as plaintiff seeks to have it appear; that there are no disagreeable odors from the works, and no vibrations to cause the damage of which plaintiff complains.

It is in place to state that the plaintiff built and occupied his house some time before defendant's works were erected on the adjacent lots (15 and 16).

We pass for the time being the plea of res judicata.

The following diagram gives an idea of the place. There is no pretense that the distances are indicated with accuracy.

PATTERSON ST.

SEGUIN ST.

Lot 1
Defendant's Shop

Defendant's Shop
Lot 2

Tuft's Shop
Lot 3

Defendant's
Ferrofix Dept.
16

Lot

Defendant's Machine Shop
Lot 15

Lot 14

Plaintiff's
Property

75 ft.

40 ft.     MORGAN ST.

There are residences near by, and some of the buildings are occupied as places of business and dwelling houses. Persons occupy the upper story. Some of them have rooms near their business places. The courthouse is about 150 feet from defendant's shops. At times the noise interfered with public business.

There are other noisy places in the square in question. There is a sawmill, and a large blacksmith's shop (perhaps not quite as noisy as defendant), making their full share of noise. The testimony does not create the impression that it is a place very generally valued highly as a place for homes.

In reading the testimony, our attention was arrested, in the first place, by the testimony of the witness Freret, who is a naval inspector of the United States government. He testified that he was in the upper story of plaintiff's dwelling while the employés of defendant were working at lathes at the shop on Morgan street; that the rumbling from this shop and the vibrations which were felt in plaintiff's house rendered it impossible to sleep in it after a day's work.

Judge Seymour, in answer to a question, testified, regarding the machine shops next to plaintiff's house, that they made a loud and disagreeable noise, and that after he had been in plaintiff's house a short time he gladly found his way out.

Another witness for plaintiff, John W. Webster, a mechanical draftsman, accustomed to the noises of foundries and other iron works, testified that while he was in plaintiff's house he heard heavy pieces fall or thrown on the ground, he felt the floor shake, and that this occurred several times. This witness goes into some details in regard to lathes, and states that in turning brass thereon it makes a disagreeable noise.

Robert Scherer, another witness, an engineer and machinist, testified that the noises from the lathes were grating upon the nerves; that, if a round-shaped piece of iron was worked upon the lathes, it would produce only a little noise, but a facing piece— that is, a piece to face off—caused a strange noise, while, as he termed it, "facing the piece."

F. Page, formerly a clerk of the district court, testified that defendant's shops facing on Morgan street caused plaintiff's building to shake, he felt the vibrations while he was in the building, and that there was a strong odor of gas in the yard.

Mrs. Rebentisch and members of plaintiff's family, as well as the plaintiff himself, unite in pronouncing defendant's works a "horrible nuisance."

On the other hand, even a larger number of witnesses testified for defendant, and

they are equally as positive that the machine shops are not disagreeable; that they do not cause vibrations. They testified that the lathes were laid on well-prepared foundations, and that there could be no vibrations.

There is evidence of noise and smoke coming from lots 15 and 16. In transferring the machine shops from lots 1 and 2 to lots 15 and 16 adjacent to plaintiff's property, the defendant only changed the character of the noise and the extent of the vibrations. There remained enough of both to be injurious. It appears that the machine shop was operated in the busy season late into the night.

We will not dwell further upon facts than to state that defendant's factory is equipped, as we understand, as such factories usually are, it is well conducted, and there is as little noise and hum of machinery as can be heard in such a factory, i. e., no further noise was made and no further steam escaped than actually necessary.

In taking up the review of the decisions, we have changed the usual order followed, and take up those of foreign courts first, and, afterwards, those of our own country.

In an English case in the House of Lords, plaintiffs sued to recover damages from defendants for injury done to their trees and crops. Plaintiffs purchased a large estate, consisting of a manor house and about 13 acres of land, within a short distance of which stood the works of defendants. Plaintiffs charged that the defendants erected and used certain smelting works upon land near the dwelling house of plaintiffs and lands of plaintiffs, and caused large quantities of noxious gases and vapors to issue from these works and diffuse themselves over the lands of plaintiffs, whereby the hedges, trees and shrubs, fruit and herbage were greatly injured, the cattle were rendered unhealthy, and plaintiffs were prevented from having so beneficial a use of the land and premises as they would otherwise have enjoyed, and the lands were depreciated in value.

Plaintiffs' evidence maintained that the damage done to their plantations and the very unpleasant odor of the vapor, when the wind was in a particular direction, affected persons as well as plants.

On the part of defendants, it was shown that the neighborhood was studded with manufactories and tall chimneys, that there were some alkali works close by defendants' works, that the smoke from one was quite as injurious as the smoke from the other, that the smoke of both sometimes united, and that it was impossible to say to which of the two any particular injury was attributable.

The lord chancellor's opinion was substantially that there is a difference between an action brought for a nuisance on the ground that it was productive of sensible, personal discomfort, and nuisance upon the ground that it produces material injury to property; that if a man lives in a town it is necessary that he subject himself to the consequences of these operations of trade, which may be carried on in his immediate locality, which are actually necessary for trade and commerce, also for the enjoyment of property and for the benefit of the inhabitants of the town and of the public at large; that if a man lives on a street where there are numerous shops, and a shop is opened next door to him, which is carried on in a reasonable and fair way, he has no ground for complaint because to himself individually there may arise as much discomfort from the trade carried on in that shop. But, when an occupation is a material injury to property, then there arises a very different consideration. He said, in a case of that description, the submission which is required from persons living in society to that amount of discomfort which may be necessary to the legitimate and free exercise of the trade of

their neighbors does not apply to circumstances, the immediate result of which is sensible injury to the value of property. The law does not regard trifling inconveniences.

The damages assessed remained as found by the nisi prius court. House of Lords cases, vol. 11, 1864–1866, p. 650.

The decision is interesting, read at length. It contains an extensive review of the English decisions upon the subject, and clearly sets forth the trend of jurisprudence in England upon the point at issue.

We have quoted from the above decision because of its reference to lawful enterprise. As relates to injurious noises, it has since been decided that they are a nuisance, thus setting aside views before expressed as relate to physical discomfort. It seems that the English courts also overrule, change, and modify their decisions as occasion demands. Broder v. Saillard, 2 C. H. D., 692; Crump v. Lawler, L. R., 3 Equity, 409.

Our researches in French jurisprudence have not enabled us to find a pertinent decision. We infer that there are not many decisions in France upon the subject, for the reason that that particular matter is left in great part to municipal regulation, and not to private suits for damages.

We found that in Paris there is a municipal ordinance prohibiting the carrying on of noisy occupations during certain hours of the night.

The comfort of the inhabitants, and the interest of the workman and of industrial enterprises as well, fall within the purpose of municipal regulation. Carpentier, vol. 8, p. 481, No. 70.

The jurisprudence of the federal courts also hold that physical discomfort or a tangible injury to property itself is a nuisance; that is, that both are nuisances for which damages may be recovered.

In a legal controversy between a church in Washington, whose congregation was disturbed in its worship by a building of a railroad for housing locomotive engines, in a well-considered decision, the court held:

> "If, as asserted by the defendant, the noise, smoke, and odors which are the cause of the discomfort and annoyance to plaintiff are no more than necessarily arise from the nature of the business carried on, then the engine house and the work shop should be remodeled and changed in their structure so as to prevent, if that be possible, the nuisance complained of, and if that be not possible they should be removed to some other place where, by their use, the plaintiff would not be thus annoyed and disturbed in the enjoyment of its property. There are many places in the city sufficiently distant from the church to avoid all cause of complaint, and yet sufficiently near the station of the company to answer its purpose." Railroad Company v. Church, 108 U. S. 334, 2 Sup. Ct. 719, 27 L. Ed. 739.

The situation here is different. Defendant's business consists in supplying vessels on the river with machinery, boilers, and other appliances. Its place is suitable to its business. Its industry is useful and important. It cannot be easily removed, as was suggested in regard to another building in the decision just cited.

We will briefly refer to the jurisprudence in state jurisdictions.

The consensus of the better judicial thought is that an occupation lawfully located and followed is never, per se, a nuisance, so that such an occupation is not to be denounced a nuisance, except to the extent that it is a nuisance. The fact that the city council refused to grant plaintiff a permit to establish its iron works, as before mentioned, does not render an occupation a nuisance that is not. It can have no weight in deciding the question involved.

We deem it also proper to state here that only downright discomfort is actionable. Small inconveniences do not recommend themselves as cause sufficient to close down an industry. The nuisance must be such as is annoying to a person in a normal state of health.

Upon this subject we quote, as pertinent, Dennis v. Eckhart, 3 Grant, Cas. (Pa.) 390.

"Smoke and nauseous smell may be a nuisance." City v. Lambert, 14 La. Ann. 247; State ex rel. Denis v. Judge, 105 La. 731, 30 South. 101.

We have stated as above in order to add that the machine shops and machines on lots 15 and 16 are nuisances, and should be abated by smothering or suppressing the hum of the machinery, and, if that cannot be done, then they should be entirely closed.

We have said that before closing we would take up the plea of res judicata, predicated upon our prior decision.

Defendant's insistence is that the issues are the same, and that defendant is entitled to its protection.

Granted, for the moment, that it is as urged, defendant can find no sufficient justification to carry on its works on lots 15 and 16. If the condition continued the same, if there is about similar noise, no greater volume of smoke, and the vibrations are the same, then the first suit had the effect of res judicata. We have seen that changes have been made. It would be difficult to determine the extent the works in the rear of plaintiff's lot have contributed to his annoyance. In our opinion the machine shop of itself has given ground sufficient for the suit. The foregoing, for the purpose of the decision, sufficiently expresses our view as regards res judicata.

We have noted above that plaintiff sued for damages, and defendant pleaded the general issue. No part of the pleadings calls for the closing of any of defendant's works. It is none the less manifest that the modus vivendi for the future will have to be settled upon in some way known to the law. We will state that there is no good reason why the noise of the anvil may not be smothered or deadened; the large lathes placed at some distance; also the forges; escape pipes made to conduct the smoke and gases away in another direction (both from the machine shops and the brazing machine). In this way the nuisance can be avoided.[1] If this cannot be done, then, we repeat, the machine shops and other machines on lots 15 and 16 will have to discontinue their offensive operations.

While we have not expressly passed upon the questions arising from the asserted nuisance on lots 1 and 2, that which is said just above regarding the machine shops may serve a good turn regarding the former.

This brings us to a consideration of the amount of damages. The dwelling, it is said, has been shaken, the windows and doors are out of plumb, and it seems that the doors and windows answer the purpose of letting in the smoke and cold air, instead of excluding them, and the plastering has fallen in the upper story. It is not shown how much it will cost to place the house in good repair. Not a great deal, we imagine. The house is not new.

We will fix the damages in our decree.

Plaintiff himself, in the first suit, limited his claim to damages to $2,500, and is thereby offered some basis for his claim.

It is therefore ordered, adjudged, and decreed that the plaintiff have judgment against the defendant for the sum of $2,000, with legal interest from the day this judgment will be handed down.

It is further ordered, adjudged, and decreed that the judgment appealed from be reduced to said amount, and, as thus amended, it stands affirmed; costs of appeal to be paid by appellee.

NICHOLLS, J., takes no part, not having heard the argument.

---

[1] Note. That there is no evidence in record of any smoke was reiterated by defendant. They (defendants) had "an engine in front of plaintiff's building next to plaintiff's house." There was a steam escape pipe "projecting" on Morgan street, "noxiously near to plaintiff's dwelling." See page 265 of record.

ROBIDEAUX v. HEBERT.

## On Rehearing.

LAND, J. The damages awarded herein are for the nuisance created by defendant's works on lots 15 and 16, and the force and effect of the decree is restricted to said works. It is so ordered, and with this explanatory amendment the application for a rehearing is refused.