(43 South. 938.)

No. 16,416.

PERRIN v. CRESCENT CITY STOCK-
YARD & SLAUGHTERHOUSE
CO., Limited.

(April 15, 1907.  Rehearing Denied May 13,
1907.)

1. NUISANCES — INJUNCTION — ABATEMENT —
EVIDENCE.

This suit is brought by plaintiff (a property owner residing thereon, in the neighborhood of the defendant corporation's plants) to have a fertilizer and tallow plant carried on by it at its abattoir declared a nuisance and abated. Plaintiff obtained a preliminary injunction, which (after hearing) was perpetuated absolutely as to its fertilizers and modified as to its tallow plant. The court rejected the demand for damages. Defendant appealed, and plaintiff on appeal prayed that the judgment be amended so as to maintain the injunction in its entirety with damages.

The plaintiff entered into this litigation with the prima presumption that the fertilizer and tallow rendering plants of the defendant were nuisances. Villavaso v. Barthet, 1 South. 599, 39 La. Ann. 247. That presumption is corroborated by the action of the police jury taken in reference thereto and by the evidence adduced on the trial.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Nuisance, §§ 84-86.]

2. SAME—NOXIOUS ODORS.

The odors complained of are the legitimate and natural cause of the nuisance charged. They are not shown to be injurious to health, but are a source of great discomfort to plaintiff and his family. A use of property which materially interferes with the physical comfort of those who live in the neighborhood, or which impairs the enjoyment of their home, may be a nuisance, even though it does not impair their health or result in driving them from their homes.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Nuisance, §§ 26-34.]

3. SAME—EVIDENCE.

The mere fact that other nuisances exist in the same locality which produce similar results is no defense, if the nuisance complained of adds to the nuisance already existing to such an extent that the injury complained of was measurably traceable thereto. It is not necessary that all the injury should be the result of the nuisance charged, if it be of such a character and produces such results as, standing alone, it would be a nuisance to plaintiff. The fact that it is the principal, though not the sole, agent producing the injury, is sufficient.

(Syllabus by the Court.)

Appeal from Twenty-Ninth Judicial District Court, Parish of St. Bernard; Nemours Henry Nunez, Judge.

Action by Alexander P. Perrin against the Crescent City Stockyard & Slaughterhouse Company, Limited. Judgment for plaintiff, and defendant appeals. Modified and affirmed.

Fernando Estopinal and Conrad Green Collins (Denègre & Blair, of counsel), for appellant. A. E. & O. S. Livaudais, for appellee.

## Statement of the Case.

NICHOLLS, J.  The plaintiff alleges: That he resides in the First Ward of the parish of St. Bernard, in premises by him leased from the Friscoville Realty Company, on their lands fronting the public road extending alongside the Mississippi river; his said dwelling house being at a distance of about 300 feet in the rear of said public road. That he and his family have occupied said dwelling for many years. That he is entitled to the quiet and peaceful enjoyment of his home and its comforts, unobstructed by noisome vapors or odors created by manufactories or industries of any kind or discription established in the vicinity, and negligently conducted by the owners thereof. That the Crescent City Stockyard & Slaughterhouse Company, Limited, a corporation organized under the laws of this state and whose domicile is in this parish, have for many years been operating and are still operating a slaughterhouse upon their property fronting the Mississippi river, situated about 700 feet below the United States Barracks, and immediately adjoining the property of the Friscoville Realty Company, upon which stands petitioner's dwelling.

That said slaughterhouse was established by said defendants in conformity with their charter of incorporation on the 15th of February, 1893, the purposes of which are in said charter said to be to operate stock landing yards and slaughterhouses for the yarding, sheltering, and slaughtering of all kinds of live stock, etc. That in addition to their said business of stock landing, yarding, and sheltering live stock, authorized by their charter, the said corporation in violation of their said charter, in disregard of the rights and comforts of the inhabitants and property owners of the vicinage, and also in violation of the ordinance of the police jury of the parish in such case made and provided, have recently, within the last three years, established upon their premises, at a distance of about 300 feet from the river front, a fertilizing plant and rendering and boiling factory, for the manufacture of fertilizer, tallow, hog's hair bristles, and other articles for sale.

Petitioner represents that the ordinance of the police jury of the parish of St. Bernard enacted February 2, 1891, provides that it shall be unlawful to carry on the business of tallow or oil, or rendering factories, or other establishments for the rendering of animal matter, at any point within three-quarters of a mile of the abattoirs of the Crescent City Live Stock Landing & Slaughterhouse Company, and that all such factories and establishments shall be established in the rear of the new line of the New Orleans & Gulf Railroad Company; that is, on the lake side thereof. That said ordinance was at a following meeting of said police jury, held on March 4, 1891, amended so as to read that from and after the 1st of March, 1891, it shall be unlawful to carry on any such business or factories at any point within 100 feet of the new line on the lake side of the New Orleans & Gulf Railroad Company, etc., which tracks are situated about a mile towards the lake and in the rear of the Mississippi river.

That since the establishing of said factory the neighborhood and surroundings have been infected by noisome smells and odors, to the extent that living in the locality is unsupportable, and that repeated complaints have been made, to no avail.

That in the conduct of their factories aforesaid the defendants allow the matter, consisting of offal and gut fat, excrement of slaughtered animals, from which the fertilizer is made and tallow is made, some of which refuse matters are carted from the city of New Orleans, to remain in the open and accumulate in their factory until a putrefied mass, emitting noisome gas and vapor, filling the atmosphere with nauseous and penetrating vapors. That the noisome vapors and odors emanating from said putrefied mass of animal refuse, entrails, hoofs, and excrements, etc., thus exposed as aforesaid, and especially when, during or after the process of boiling and rendering the same, the vats are opened, the noisome gases and vapors are unwholesome and nauseating, contaminate the atmosphere, and pollute the air at a great distance, including the locality where petitioner resides and owns property, to his great discomfort, injury, and damage, and that of his family, and depreciate the value of all property in the vicinage, including petitioner's. The said gases and odors caused by said defendants' acts are unwholesome, unhealthy, and dangerous, not only to the inhabitants of the immediate vicinity or neighborhood, but to the general public, for the reason that the said factory is conducted in close proximity, in the same building where the meats of animals slaughtered by them are dressed and prepared for the New Orleans market, and the said vapors, being so penetrating, necessarily taint said meat. That so disagreeable, noisome, and nauseous are the odors emanating

from the defendants' said factory that his invited guests have on several occasions been compelled to leave the dinner table, that he and his family cannot enjoy their meals by day and sleep by night, and that his friends have often inquired how he could live in such a place. That the works complained of are located in the center of the most thickly populated portion of the parish, being surrounded by residences and business houses within 900 feet of the United States Barracks where some 300 or 400 soldiers and officers and their families are quartered, and is located less than 400 feet from the upper line of Friscoville, a newly established village, in which petitioner lives, and which is rapidly being settled, and has been laid out by capitalists, who have organized a joint-stock company in which petitioner owns a large interest, amounting to $20,000 in stock, besides his being the owner of several lots by him purchased near said factory, as he contemplated building a comfortable home thereon. That the said village has been divided into lots, which are now in the market for sale, and that the nuisance he complains of herein, is the only impediment to a free and rapid disposal of the same—all to petitioner's great loss, damage, and injury, and that of the general public interested in establishing homes thereon, adding to the population and wealth of that section of the parish. That at the time a privilege was first granted to the corporation to erect and operate a slaughterhouse on the site now occupied by the defendant, of whose negligence and unlawful act in establishing a rendering plant petitioner complains, the territory above and below same fronting on the Mississippi river and in the rear from the United States Barracks on the lower line of New Orleans down the Chalmette, in the parish of St. Bernard, was sparsely settled, and in some sections thinly populated. That of late, and particularly within the last five years, millions of dollars have been invested in the immediate neighborhood, new industries have been established and are now carried on, hotels and boarding houses have been created, new works have been built, villages have been established, inviting individuals to invest in homes in the locality, houses and elegant residences have been built, old and neglected houses have been tenanted, the United States government has added extensive improvements to its reservation at the barracks, and contemplates further improvements thereto, and the population has increased tenfold; and that a rendering establishment and tallow factory, in all cases and under all circumstances a prima facie nuisance, should be made to give way to the rights of the public, especially when such works have been established in violation of the ordinances of the parochial authorities and are shown to be conducted with utter disregard of the comfortable enjoyment of property. That through the illegal and wanton acts of said defendants, in establishing and maintaining said nuisance on their property, in total disregard of your petitioner's rights and notwithstanding your petitioner's repeated protests and remonstrances, and those of his friends and neighbors, he has been damaged in the sum of $10,000. That said damage is continuous and increasing, and will cause him irreparable injury, if not enjoined by due course of law, and that he is entitled to a writ of injunction herein. Petitioner alleges that in consequence of the unlawful acts and doings of said defendants in establishing and maintaining the above-described nuisance, which has grown worse from day to day, until it has become insufferable, and in violation of his personal comfort and that of his family, as above set forth, he has suffered damages, which he set out.

In view of the premises he prayed: That the defendant be cited to appear, and that

there be judgment, in favor of petitioner and against defendant, declaring the rendering establishment and tallow factory now operated by them on their property a nuisance, and that the same be abated. That a writ of injunction issue herein, directed to defendants, enjoining and prohibiting them from establishing and operating the business of manufacturing fertilizer and rendering of animal matter and tallow factory upon their premises in the First Ward of the parish of St. Bernard.

That there be also judgment in his favor, and against defendants, making the injunction herein sued out perpetual, and condemning the defendants to pay to petitioner $10,-000, with legal interest from judicial demand, and all costs, and for general relief. An injunction was issued and executed under order of the court, and was subsequently bonded.

Defendant answered, pleading a general denial.

The district court rendered judgment in favor of the plaintiff against the defendant, perpetuating the injunction against the operation of the fertilizing plant, and forever enjoining and restraining defendants from ever operating or making fertilizer at the said plant in the First Ward of the parish of St. Bernard.

It further ordered, adjudged, and decreed that there be judgment rendered herein in favor of plaintiff and against said defendant corporation, perpetuating the injunction against the tallow plant only in so far as to prevent the operation of the said plant without modern deodorizers and the rendering of anything but fresh tallow, and forever enjoining and restraining the defendant corporation from ever operating the said tallow plant in the First Ward of the parish of St. Bernard, except with the most modern deodorizers, and for the purpose of cooking and rendering fresh tallow only; the remnants of said tank to be at once removed from said plant of defendant corporation.

It further ordered that, in reference to the damages prayed for by plaintiff, there be judgment herein in favor of defendant and against said plaintiff, dismissing the said plaintiff's demand as in case of nonsuit. It further ordered that defendant pay all costs of suit.

Defendant appealed.

## Opinion.

Plaintiff answered the appeal, praying that the judgment be amended by enjoining the defendants also from cooking or manufacturing tallow of any kind or description at its present plant, situated in the First Ward of the parish of St. Bernard, and that said judgment should be further amended by allowing respondent a reasonable amount in damages actually suffered, as prayed for in plaintiff's (appellee's) petition, and as proven by the record, in the sum of at least $5,000.

In the brief filed in behalf of the defendant, its counsel say that:

"It succeeded to the rights and business of the Crescent City Stockyard & Slaughterhouse Company, which under Act No. 118, p. 170, of 1869, at the same location and on the same premises, conducted the stock landing yards and slaughterhouse; that in the stockyards, or stock landing, adjacent to the slaughterhouse, the tallow rendering and fertilizing plant of the defendant, are situated the stock pens. In these stock pens are received all the cattle, pigs, etc., brought into the city of New Orleans for market, and placed either in market for sale to butchers, to be butchered for human food in the city, or to be sold to local dealers in cattle, or to dealers for export. The locality is the cattle market and slaughterhouse, stockyard, and cattle landing district.

"On February 2, 1891, the police jury of the parish of St. Bernard (in which the property is situated) by ordinance prohibited the operation of 'tallow and oil rendering factories, fertilizer manufactories, gut and tripe factories, and other factories for the rendering of animal products,' within three-quarters of a mile of the abattoir of the Crescent City Live Stock Landing & Slaughterhouse Company, declaring that 'all factories and establishments shall be established in the rear line of the New Orleans & Gulf Railway Company; that is, on the lake side thereof.'

"On April 18, 1891, the ordinance of February 2d was amended, and the location of the said factories 'prohibited at any point within 100 feet of the new line of the New Orleans & Gulf Railroad Company.'

"On the 7th of October, 1895, permission was granted to Pierre Piat and others to conduct the tallow rendering, gut, and tripe factories within the prohibited zone.

"At a meeting of the police jury held on August 1, 1894, the following action was taken: The report of the committee to investigate and report on the condition of the factories and rendering establishments, tripe houses, tallow factories, etc., in which animal substances are dealt with, as also the slaughterhouses located in the upper portion of the parish, reported that said establishments as at present conducted are in such condition that they are public nuisances; that they are hereby authorized to employ a surveyor, who shall locate within 15 days the farthest point of high ground in the rear of the tracks of Louisiana & Southern Railroad to erect establishments, buildings, and plants for the rendering of dead animals, to report again to the police jury, and also to the board of health, when organized under the statute recently passed by the General Assembly (Act No. 192, p. 437, of 1898).

"The defendant began to render tallow and make fertilizers out of the products obtained from the animals slaughtered daily on its premises for the market in New Orleans in 1901. On October 8, 1904, an ordinance adopted by the board of health at its session September 6, 1904, was adopted by the police jury, under the title:

" 'An ordinance regulating all fertilizer manufactories, gut and tripe factories, sausage factories, and other establishments for the purpose of rendering animal products, in this parish, and also establishing and regulating the drainage of the refuse matter therefrom, and repealing all previous ordinances regulating all such establishments.' "

Defendant urges that:

"By this ordinance that of April 18, 1891, and that of October 8, 1904, and all former ordinances on the subject-matter, were repealed."

The ordinance of April 18th was on its face an amendment, and not a repeal, of that of February 21st.

In the body of the ordinance of October 8, 1904, occurs the following section:

"All rendering establishments using dead animals in their said establishments are hereby located at a point not nearer than 300 feet on the lake side of the center of the track of the Louisiana Southern Railroad as at present located, and that hereafter no corporation, firm, person, or persons will be allowed to build and operate a rendering and fertilizer plant, a tallow, gut, tripe, sausage, or oil factory, without first submitting his or their plans and specifications before the board of health for this parish for approval."

This ordinance was preceded by the following preamble:

"Whereas, numerous complaints have been made, both by the residents of the upper section of this parish and the lower section of the parish of Orleans, of the noisome stench emanating from different fertilizer factories and rendering plants, located and operating in the First Ward of this parish;

"And whereas, the nuisance can be remedied and abated only by proper regulation and the proper drainage of said establishments:

"Be it ordained," etc.

We may note here that the proceedings of the police jury of February 21, 1891, show that just prior to the adoption of the ordinance of that date a communication to that body from the state board of health was read, asking for the removal of tallow and oil rendering, fertilizers, and sausage factories and tripe and gut houses, to a distance of three-quarters of a mile from the abattoir.

We find in the transcript, as an exhibit offered in evidence by the defendant, a resolution of the police jury of St. Bernard declaring that:

"Whereas, the committee of the police jury of St. Bernard, appointed on August 1, 1898, to investigate and report on the condition of the factories and rendering establishments, tripe houses, tallow factories, etc., in which animal substances are dealt with, as also the slaughterhouses located in the upper portion of the parish, has this day reported that said establishments, factories, etc., as at present conducted, are in such condition that they are public nuisances, and has recommended that the said nuisances be abated; therefore be it resolved by the police jury of the parish of St. Bernard: That the committee heretofore appointed continue in charge of the subject, and shall be and, are hereby authorized to employ a surveyor, at a reasonable compensation to be paid by the parish, who shall locate within the next fifteen days after the passage of this resolution, the farthest point of high ground in the rear of the tracks of the Louisiana & Southern Railway upon which it is practicable to erect establishments, buildings, and plants for the rendering of dead animals, and also to examine and report to the police jury a suitable system

of drainage for draining the refuse matter and other liquids from the establishments named in the foregoing preamble, together with a recommendation of the apportionment of the work between the said establishments pro rata. That said report shall be made to the police jury at its next regular meeting, and also to the parish board of health when organized under the statute recently passed by the General Assembly. "Be it further," etc.

We do not find, from an examination of any or all the proceedings of the police jury, that the ordinances prohibiting the operation of the tallow factories or fertilizing plant on a point nearer to the river than the line of the Louisiana and Gulf Railroads have ever been repealed or modified. The provisions of the ordinance of October 8, 1904, refer to the methods to be pursued in regard to them whenever they may be operated.

We do not find any direct declaration by the board of health or the police jury that the carrying on by the corporation of either a tallow rendering plant or a fertilizing plant at its present location is a nuisance; but by necessary implication the police jury reached that conclusion when it prohibited the carrying on of all such operations at its present location.

The district judge, whose residence is shown to be in the immediate vicinity of the defendant plant, refers to the condition of affairs there as follows:

"That the odors arising from the plant or plants of the defendant corporation are sometimes obnoxious and unbearable there is no question, and that fact is borne out by the evidence. As to what is due the said obnoxious odors, and to which of the two departments attacked by the plaintiff, is the serious question. There is no question that a good deal of the discomforts are due to the indifference with which the plant is operated. * * * As to whether the tallow rendering plant or the fertilizing plant is responsible for the said odors, the court knows that the latter plant is responsible, and the evidence proves it."

The plaintiff enters into this litigation with the prima facie presumption that it is a nuisance. Villavaso v. Barthet, 39 La. Ann. 247, 1 South. 599. This presumption is corroborated in the present case by the action taken in the matter by the police jury, and it is supported by the evidence taken on the trial.

We find, from the evidence so taken, that the odors complained of are the legitimate and natural cause of the nuisance charged, though we do not find that they are injurious to health. It is an exaggeration to say that they are unbearable; but that they are a source of great discomfort to defendant and his family and to the residents of the neighborhood cannot be denied. A use of property which materially interferes with the physical comfort of those who live in the neighborhood, or which impairs the physical enjoyment of their home, may be a nuisance, even though it does not injure their health or result in driving them from their home. Am. & Eng. Encyclopædia of Law, vol. 21, p. 286; Wood on Nuisances, p. 104, § 75. While the evidence shows that the value of property in the immediate neighborhood of the plant is increasing, and has been for some time past, that condition of things has been brought about, in spite of the bad odors at the place, by reason of the building of a very large sugar refinery in the vicinity and the purchase of large tracts along the river front by terminal road companies; these facts carrying with them the employment of a very large number of workmen and the necessity for buildings to meet the future demands of parties employed by them or having relations with the business which will be carried on at that point.

The exigencies or requirements of business will force men and their families to reside in the vicinity; but we think that the increase of values referred to would be much greater than they are if the odors prevalent there were not present. We can appreciate that fact, without being able to fix what that difference in values is or will be.

Defendant contends: That the injury

must be clear, direct, and positive. It must be the legitimate and natural cause of the nuisance charged, and in no essential degree that result of other artificial causes. The benefit of the doubt will be given if his trade be lawful.

That whether the maintenance of a lawful business, productive of noxious or offensive gases or stenches, amounts to a nuisance, depends upon the facts of each case. That in determining the question it is necessary to take into consideration all of the surrounding circumstances. That in actions of this kind small annoyances and inconveniences must not be regulated—citing Wood's Law of Nuisances, §§ 472–792; Kennedy v. Phelps, 10 La. Ann. 227; Werges v. Railroad Co., 35 La. Ann. 641; Blanc et al. v. Murray, 36 La. Ann. 167, 51 Am. Rep. 7; State ex rel. Violett v. Judge, 46 La. Ann. 85, 14 South. 423; Dubos v. Dreyfous, 52 La. Ann. 1117, 27 South. 663; Civ. Code, art. 669.

Defendant further contends that the production of mere inconvenience resulting from the exercise of a lawful trade is not sufficient to declare that trade a nuisance. Wood on Nuisances, § 792. The following authorities are relied upon:

In Lambeau v. Lewinski, 47 Ill. App. 656, plaintiffs brought suit to enjoin a tannery. It appeared that the tannery was in a business neighborhood, surrounded by other tanneries, a coal yard, gas works, a dock, box factory, and a railroad; that the tannery had been in operation 16 years, and a large amount of money was expended thereon; that plaintiff's property consisted of two tenements, separated from the tannery by an alley; that the tannery was conducted in a skillful manner, and with as little offense and damage to the neighborhood as was consistent with the nature of the business.

In Gilbert v. Showerman, 23 Mich. 448, the court held that:

"The most offensive trades are lawful, as well as the most wholesome and agreeable; and all that can be required of the men who shall engage in them is that due regard shall be had to the fitness of locality. They shall not carry them on in a part of the town occupied mainly for dwellings, nor, on the other hand, shall the occupants of a dwelling in a part of a town already appropriated to such trades have a right to enjoin another coming in because of its offensive nature. Reason and just regard to the rights and interests of the public require that in such case the enjoyments of pure air and agreeable surroundings for a home shall be sought in another quarter; and a party cannot justly call upon the law to make that place suitable for his residence which was not so when he selected it."

In Doellner v. Tynan, 38 How. Prac. 176, the court held that:

"Where a street in a city ceases to be used as a place of residence, and is changed to a place of business, no one or two of the persons who may, for any reason, desire to continue their residence therein, should be allowed to prevent the carrying on of a lawful and useful trade, merely because they are or may be subjected to annoyance, or even loss thereby."

In Ruff v. Phillips, 50 Ga. 130, the court held that:

"To render a business liable to be abated as a nuisance, it must be offensive, unhealthful, etc., to persons of ordinary nature and condition. That it is offensive to delicate and sensitive organizations is not enough. Thus the use of a warehouse for storing guano in the ordinary manner cannot be abated upon showing merely that individual members of complainant's family were nauseated by the odors from it."

In the case of Eller v. Koehler, 67 N. E. 89, 68 Ohio St. 51, plaintiff sued for injuries caused by defendant's machinery on an adjoining lot. It was admitted that defendant's plant was situated in a part of a city devoted to like business purposes, and was so when defendant's plant was constructed. Held error to refuse to instruct that, in determining questions of injuries, the jury should consider the locality of plaintiff's property and that of defendants. the manner of using the property, the kinds of business carried on in the vicinity, and, if plaintiff's property is situated in the vicinity of other shops in a populous city, they should consider such fact, and that a party dwelling

in the vicinity of shops in a populous city cannot have the same freedom from annoyance that he would have in other districts, and if these annoyances are trifling, or such as not to cause really material injuries, plaintiff could not recover.

In Rogers v. Elliott, 146 Mass. 349, 15 N. E. 768, 4 Am. St. Rep. 316, the court held that:

"The criterion for determining whether a court of equity will restrain by injunction an existing or threatened nuisance is whether the nuisance complained of does or will produce such a condition of things as in the judgment of reasonable men is naturally productive of actual physical discomfort to persons of ordinary sensibilities and of ordinary tastes and habits, and as in view of the case is unreasonable and in derogation of the rights of the complainant.
"The question as to whether acts complained of constitute a nuisance is one of fact." Stowe v. Miles, 39 Conn. 428; Bierce v. Sharon Electric Co., 73 Conn. 300, 47 Atl. 324.

See, also, Tuttle v. Church et al. (C. C.) 53 Fed. 423.

"The courts will require a very strong case for the granting of an injunction which will cause more injury than it will remedy, and it may be said as a general rule that an injunction will not be granted where it will be productive of a greater injury than will result from it." Am. & Eng. Ency. of Law (2d Ed.) 363, 364; Edwards v. Allouez Mining Co., 38 Mich. 46, 31 Am. Rep. 301; Clifton v. Dye, 87 Ala. 468, 6 South. 192; Richard's Appeal, 57 Pa. 114, 98 Am. Dec. 202; Hall v. Rood, 40 Mich. 46, 29 Am. Rep. 528; Campbell v. Seaman, 63 N. Y. 568, 20 Am. Rep. 567.
"In a question of restraining a lawful business, a court of equity will consider the customs of the people, the characteristics of their business, the common uses of property, and the peculiar circumstances of the place." Huckenstine's Appeal, 70 Pa. 102, 10 Am. Rep. 669.

The following positions are maintained in the syllabus of plaintiff's brief:

(1) Tallow factories and fertilizing plants are prima facie nuisances. Wood on Nuisances, p. 784, § 583; Pruner v. Pendleton, 75 Va. 516, 40 Am. Rep. 738; Villavaso v. Barthet, 39 La. Ann. 247, 1 South. 599.

(2) The right to have the air float over one's premises free from all artificial impurities

is a right as absolute as the soil itself. Wood on Nuisances, p. 756, § 561.

(3) No one has the right to use his own, not even those engaged in the most industrious and worthy enterprises, so as to injure others about them. The use and enjoyment must have reference to the right of others. Froehlicher v. Oswald Iron Works, 111 La. 709, 35 South. 821, 64 L. R. A. 228; Froelicher v. Southern Marine Works, 118 La. 1077, 43 South. 882; Wood on Nuisances, p. 104, § 75; A. & E. Ency. of Law, vol. 21, p. 698; Chicago G. W. Ry. Co. v. First Methodist Episcopal Church of Leavenworth City, Kan., 102 Fed. 85, 42 C. C. A. 178, 50 C. C. A. 488; Columbia & H. Coal & Iron Co. v. Tucker, 48 Ohio St. 41, 26 N. E. 630, 12 L. R. A. 577, 29 Am. St. Rep. 528; Susquehanna Fertilizer Co. v. Malone, 73 Md. 268, 20 Atl. 900, 9 L. R. A. 737, 25 Am. St. Rep. 515; Frost v. Berkeley Phosphate Co., 42 S. C. 402, 20 S. E. 230, 26 L. R. A. 693, 46 Am. St. Rep. 736; McAndrews v. Collerd, 42 N. J. Law, 189, 36 Am. Rep. 508; Heeg v. Licht, 80 N. Y. 579, 36 Am. Rep. 654.

(4) Existence of similar nuisances no defense. Frost v. Berkeley Phosphate Company, 42 S. C. 402, 20 S. E. 280, 26 L. R. A. 693, 695, 46 Am. St. Rep. 736; Baltimore & P. R. Co. v. Fifth Baptist Church, 108 U. S. 317, 2 Sup. Ct. 719, 27 L. Ed. 739; Susquehanna Fertilizer Co. v. Malone, 73 Md. 268, 20 Atl. 900, 9 L. R. A. 737, 25 Am. St. Rep. 515; People v. Detroit White Lead Works, 82 Mich. 471, 46 N. W. 735, 9 L. R. A. 722; Bly v. Edison Electric Illuminating Co., 172 N. Y. 1, 64 N. E. 745, 58 L. R. A. 505; Laflin & Rand Powder Co. v. Tearney, 131 Ill. 322, 23 N. E. 389, 7 L. R. A. 262, 19 Am. St. Rep. 34.

5. The right to pursue an offensive occupation cannot be acquired by prescription. Wood on Nuisances, p. 105, § 76; People v. Detroit White Lead Works, 82 Mich. 471, 46 N. W. 735, 9 L. R. A. 722; Leahan v. Coch-

ran, 178 Mass. 560, 60 N. E. 382, 53 L. R. A. 891, 86 Am. St. Rep. 560; Mayor, etc., of City of Baltimore v. Fairfield Imp. Co., 87 Md. 352, 39 Atl. 1081, 40 L. R. A. 494, 67 Am. St. Rep. 344.

6. If, as asserted by the defendants, the odors which are the cause of the discomfort and annoyance to plaintiff are no more than those mostly arising from the nature of the business carried on, then the factory complained of should be remodeled and changed as to prevent, if that be possible, the nuisance complained of, and, if that be not possible, then it should be removed to some other place, whereby the plaintiff will not be annoyed and disturbed in the enjoyment of his property. Frost v. Berkeley Phosphate Co., 42 S. C. 402, 20 S. E. 280, 26 L. R. A. 693, 46 Am. St. Rep. 736; Froelicher v. Southern Marine Works, 118 'La. 1077, 43 South. 882; Susquehanna Fertilizer Co. v. Malone, 73 Md. 268, 20 Atl. 900, 9 L. R. A. 737, 25 Am. St. Rep. 595.

Plaintiff quotes the following authorities with extracts therefrom: Wood on Nuisances, p. 576, § 561; Am. & Eng. Ency. of Law, vol. 21, p. 698; Chicago G. W. Ry. Co. v. First Methodist Episcopal Church of Leavenworth City, Kan., 102 Fed. 85, 42 C. C. A. 178, 50 C. C. A. 488; Columbia & H. Coal & Iron Co. v. Tucker, 48 Ohio St. 41, 26 N. E. 630, 12 L. R. A. 577, 29 Am. St. Rep. 528; Susquehanna Fertilizer Co. v. Malone, 73 Md. 268, 20 Atl. 900, 9 L. R. A. 737, 25 Am. St. Rep. 595; Frost v. Berkeley Phosphate Co., 42 S. C. 402, 20 S. E. 280, 26 L. R. A. 693, 46 Am. St. Rep. 736; King v. Reed, 43 N. J. Law, 189; McAndrews v. Collerd, 42 N. J. Law, 189, 36 Am. Rep. 508; Heeg v. Licht, 80 N. Y. 579, 36 Am. Rep. 654; Froehlicher v. Oswald Iron Works, 111 La. 709, 35 South. 821, 64 L. R. A. 228; Laflin & Rand Powder Co. v. Tearney, 131 Ill. 322, 23 N. E. 389, 7 L. R. A. 262, also, reported in 19 Am. St. Rep. 39; Wood on Nuisances, p. 105, § 76; St.

Helen's Smelting Co. v. Tipping, 11 H. L. Cas. 642; People v. Detroit White Lead Works, 82 Mich. 471, 46 N. W. 735, 9 L. R. A. 722; Leahan v. Cochrane, 178 Mass. 560, 60 N. E. 382, 53 L. R. A. 891, 86 Am. St. Rep. 560, and annotation thereto attached; Mayor, etc., of Baltimore v. Fairfield Improvement Company et al., 87 Md. 352, 39 Atl. 1081, 40 L. R. A. 494, 67 Am. St. Rep. 344.

An examination of the record in this case leads us to the conclusion that the judgment appealed from, in so far as it perpetuates the injunction which issued against the operation of the fertilizing plant of the defendant, and enjoins and restrains from operation the business of manufacturing fertilizers and rendering of animal matter at their plant in the First Ward of the parish of St. Bernard, is correct. We also are of the opinion that the judgment, in so far as it dismisses as of nonsuit plaintiff's demand for damages against the defendant, is also correct. We think the court erred in modifying and amending, as it did, the injunction which issued herein, in so far as concerned the tallow factory of the defendant. The ordinances of the police jury as to the location of tallow factories in the parish of St. Bernard extend to and cover as to the locality of its operation the tallow plant of the defendant corporation. We are of the opinion that the mere fact that there exists in the locality other nuisances which produce similar results is no defense, if the nuisance complained of exists to such an extent to be measurably traceable thereto; that it is not necessary that all the injury should be the result of the nuisance sought to be charged; that, if it is of such a character and produces such results that, standing alone, it would be a nuisance to plaintiff, the fact that it is the principal, though not the sole, agent producing the injury, is sufficient. Wood on Nuisances, p. 741; Ellis v. Atlantic Mut. Ins. Co., 2 Sup. Ct. 746, 108 U. S. 347, 27 L.

Ed. 747; Frost v. Berkeley Phosphate Co., 42 S. C. 402, 20 S. E. 280, 26 L. R. A. 695, 46 Am. St. Rep. 736.

We are of the opinion that the plaintiff is entitled to the amendment of the judgment which he prays, by enjoining the defendant, also, from cooking or manufacturing tallow of any kind or description at its present plant situated in the First Ward of the parish of St. Bernard; and it is hereby so ordered and decreed—the part of the judgment of the district court on that branch of the case being hereby annulled, avoided, and reversed. It is hereby ordered, adjudged, and decreed that, except so far as herein altered, the judgment appealed from is affirmed, at defendant's costs.