SOMMERVILLE, J.
Plaintiff H. Orton sues the defendant, the Virginia Carolina Chemical Company, for $11,000 damages alleged to have been sustained by him in the death of some cows, loss in the value of others, loss in the production of milk during a number of months, and in the forced abandonment of his dairy and premises, which was occasioned by the defendant wrongfully permitting poisonous gases to escape into the air falling over plaintiff’s premises, and poisonous acid to escape into a. drain emptying into a bayou running through plaintiff’s premises, which furnished the water for his cattle.
Mrs. Ida McAfee, owner of the premises leased by the plaintiff I-I. Orton and other land in the vicinity, sues defendant to recover the sum of $16,477.80 as damages suffered’by her by reason of the above-named wrongful acts of the defendant resulting in the destruction of some of the trees and vegetation upon her land, pollution of the stream running through her property, destroying it for the purposes for which it is best fitted, loss in the rental value, and permanent injury to the land.
Defendant answered, admitting its operation of the plant, but generally denying the other allegations of plaintiffs’ petitions.
The two cases, by agreement, were consolidated for the purposes of trial and appeal. The case was tried by a jury, and resulted in a verdict in favor of the plaintiff I-I. Orton for $1,000; and a verdict in favor of the plaintiff Mrs. Ida McAfee for $2,000, and defendant prosecutes this appeal.
Plaintiffs have appeared and answered the appeals, and pray for an increase of the judgments in their favor.
Defendant acquired the land occupied by it from plaintiff Mrs. Ida McAfee in 1904 to build a fertilizer plant thereon, with the assurance that acids -would not be used in connection therewith. Mrs. McAfee was told by the superintendent of defendant company, after the plant was in operation, that if defendant used acid, “every tree I [she] had would die in time, and that the vegetation would not amount to anything.”
January 4, 1913, defendant erected an acid plant in conjunction with its fertilizer on the premises, and operated it until October, 1914. During that time it is alleged by plaintiffs, sulphuric acid was discharged by defendant into a bayou running through Mrs. McAfee’s place, which had been leased to plaintiff, H. *793 Orton, for dairy purposes, and that the acid had polluted the water, causing some of Or-ton’s cows to die, destroying his dairy business, and the gases or fumes emitted by defendant’s plant destroyed some of the trees and vegetation on the place.
There were some 39 witnesses examined in the case; and the record is quite a large volume.
A careful reading of the testimony convinces us that defendant’s plant was well •constructed, but that it did not use certain appliances that it might have used, and which were used by it in its fertilizer plant in the city of Birmingham, for washing out the tanks, and that the washing of these tanks, in the manner they were cleaned, carried sulphuric acid into the bayou running through plaintiff’s land.
It is also true that sulphuric acid fumes escaped from the plant; but it was not shown to have been in sufficient quantities to affect the trees and grass in plaintiff’s pasture. There were dead trees there, but it was not shown clearly that the fumes killed them. The evidence does- not show that they did not die a natural death. Other trees in the vicinity were not affected. And the grass may have been killed by the drought which was shown to have prevailed in the summer of 1913.
The acid did pollute the water running through the place, whereby the premises were rendered unsuitable for the purposes for which they were leased, justifying the tenant in abandoning the premises, and causing Mrs. McAfee to lose the rent which she otherwise would have had, amounting to $367.50.
The claim for diminution of value of the land cannot be allowed. Defendant has ceased to operate the acid plant. The nuisance has abated. And the damage done to the property, if any, was only temporary in its effects.
The testimony in regard to the loss under the Levi Roberson lease is not sufficient upon which to base a judgment.
Mr. Orton’s claim is for the loss of five cows; for the diminution in value of six cows; the loss of the dairy business carried on by him; loss of buildings and improvements erected by him on the premises, etc.
Several drains empty into the bayou which runs through the property leased by Mr. Orton, and the cows of plaintiff drank from the bayou.
The tanks used by defendant in the manufacture of sulphuric acid contained a sediment of mud, formed by the small particles of pyrites dust settling therein.
After the acid was drained off, the dust or mud, saturated with acid, was flushed out of the tanks into the drain of the defendant company, which emptied into the bayou.
Witnesses for defendant testified that the quantity of acid thus discharged was not sufficient to affect animal life, when drunken, and that if the water of the bayou was badly contaminated, the contamination resulted from the several plants in the vicinity which emptied obnoxious matter therein.
The evidence of the experts on these points is irreconcilable in some respects; but we think that the free sulphuric acid discharged from the plant of defendant, the loss of acid by overflow of the tanks, and the acid washed by rain on some nitric cake, which was exposed, was sufficient to and did contaminate the water of the bayou to the extent of causing the death of some of plaintiff’s coVs, to cause others to fall off in the yield of milk, and to result in the destruction of his dairy business.
[1] A post mortem examination was held on one of the cows, which showed it had suffered from acute inflammation of the stomach and intestines, caused by a strong irritant. The water drank by the cow appeared to be the sole source of the diseased condi *795 tion; and, as the water contained sulphuric acid, the damage is traceable to the water.
“A fair test as to whether a business lawful in itself, or a particular use of property, constitutes a nuisance is the reasonableness or unreasonableness of conducting the business or making the use of the property complained of in the particular locality and in the manner and under the circumstances of the case, and where the use made of his property by the person complained of is not unreasonable, it will not, as a rule, be enjoined, nor can a person complaining thereof recover damages. But when it is established that a person is creating a nuisance, the mere fact that he is doing what is reasonable from his point of view constitutes no defense.” 29 Cyc. 1156.
[2] The rule set forth in the syllabus of the case of Wichers v. Fertilizer Co., 128 La. 1011, 55 South. 657, is applicable to the conditions in this case.
“A plaintiff sustains the burden of proof when he shows that at the time his plants were destroyed and damage suffered, the defendant’s factory was freely emitting fumes, gases, and acids, which were destructive of plant life, and Lhat the wind was blowing the fumes, etc., towards his premises, some 900 feet distant, and that there was no other known agency of destruction existing in the vicinity.”
“No one has the right to use his own (not even those engaged in the most industrious and worthy enterprises) so as to injure others about him. The use and enjoyment must have reference to the rights of others.” Froelicher v. Iron Works, 111 La. 705, 35 South. 821, 64 L. R. A. 228; Froelicher v. Marine Works, 118 La. 1077, 43 South. 882; Kuhl v. Fertilizer Co., 117 La. 86, 41 South. 361; Perrin v. Crescent City Stockyard, 119 La. 83, 43 South. 938, 12 Ann. Cas. 903; Long v. Louisiana Creosoting Co., 137 La. 861, 69 South. 281; Civ. Code, art. 2315.
[3] Defendants offered evidence to show that other factories, etc., discharged objectionable matter into the bayou, and argued that it is only liable, if at all, for the consequences produced by its own act, and that it is not liable for the pollution of the waters by others.
[4, 5] The evidence that other factories, etc., polluted the waters of the bayou was not convincing. The nuisance committed by defendant was sufficient by itself to have caused damage to plaintiff. Even had the water been polluted by discharges from other factories that would not excuse defendant for its acts Which caused damage to plaintiff.
“The mere fact that other nuisances existed in the same locality which produce similar results is no defense, if the nuisance complained of adds to the nuisance already existing to such an extent that the injury complained of was measurably traceable thereto. It is not necessary that all the injury should be the result of the nuisance charged, if it be of such a character and produces such results as, standing alone, it would be a nuisance to plaintiff. The fact that it is the principal, though not the sole, agent producing the injury is sufficient.” Perrin v. Crescent Stockyards, 119 La. 83, 43 South. 938, 12 Ann. Cas. 903; Woods on Nuisances, § 75, p. 104.
“It is no defense to an action against a city for pollution of a water course that certain others have contributed to cause the nuisance, for there can be no contribution between independent wrongdoers. Where the real damage to the waters of a stream is due to the discharge of a city sewer into the stream, it is not important that the natural drainage of the city led to the stream, and that such drainage resulted in making the water impure and to a certain extent offensive.” Thompson on Negligence (White’s Supplement) vol. 8, § 5887, p. 788.
“The owner of a fertilizer factory is not relieved from liability for injuries caused to adjoining property by the fumes generated in his factory by the fact that a part of the damages resulted from other causes.” Frost v. Berkeley Phosphate Co., 42 S. C. 402, 20 S. E. 280, 26 L. R. A. 693, 46 Am. St. Rep. 736.
Plaintiff Orton lost several cows; other cows were diminished in value; his business was broken up; the improvements made by him became valueless. The jury awarded him $1,000. This amount is inadequate to compensate him for his loss through fault of defendant.
It is therefore ordered, adjudged and decreed that the judgment in favor of H. Or-ton and against defendant be amended by increasing it to $2,000; and, as thus amended, it is affirmed, with costs.
It is further ordered, adjudged, and decreed that the judgment in favor of Mrs. Ida McAfee and against defendant be amended by reducing it to $367.50, with interest, and, as thus amended, it is affirmed. Costs in the *797 trial court in the McAfee suit to be paid by defendant, and costs of appeal to be divided equally between Mrs. McAfee and defendant.